MAUD F. LANIGAN *vs.* JAMES F. LANIGAN.

Essex.    November 3, 1915. — November 22, 1915.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & CROSBY, JJ.

*Husband and Wife. Parent and Child. Alienation of Affection.*

In an action by a widow against the father of her late husband for alienating her husband's affection and persuading and enticing him to leave her, there was evidence that the defendant from the time of his son's marriage to the plaintiff exhibited a positive dislike of her which as time went on deepened into a feeling akin to hatred, that at the time of the marriage the plaintiff's husband was about thirty-three years of age, that for nearly six years after their marriage the plaintiff and her husband dwelt happily together, that her husband then began to treat her with coldness, which he attributed to a desire to please his

---

[*] *Fox,* J.

father, and that she was asked to consent to a divorce or to some form of separation "in order to please his father," that thereafter the plaintiff and her husband occupied separate rooms and he began to absent himself for long periods, that, when the plaintiff asked the defendant where her husband was, he replied that "that was his business and not mine," that for two years preceding his death her husband did not return to his home but lived at his father's house until he died there, and that, when the plaintiff said to the defendant that her husband should be sent back to her because "when he is sick, his place is at home," the defendant replied, "He is mine, and I will keep him." *Held,* that the plaintiff was entitled to go to the jury, who would have been warranted in finding that the affection of the plaintiff's husband had been alienated and that he had been induced to abandon his home through efforts of the defendant that were inspired by ill will toward the plaintiff.

TORT by the widow of James F. Lanigan, junior, late of Lawrence, against the father of her late husband, for alienating and destroying her husband's affection for her and persuading and enticing him to leave the plaintiff and to continue absent from his home for a long period and up to the time of his death. Writ dated April 6, 1914.

In the Superior Court the case was tried before *Quinn,* J. At the close of the evidence, which is described in the opinion, the defendant asked the judge to make the following rulings:

"1. The evidence in the case is insufficient to overcome the presumption that in all that the defendant said or did he acted under the influence of natural affection and for what he believed to be the real good of his son.

"2. Upon all the evidence in the case the plaintiff is not entitled to recover."

The judge refused to make these rulings, and submitted the case to the jury, who returned a verdict for the plaintiff in the sum of $22,500, of which by requirement of the judge the plaintiff afterwards remitted all in excess of $10,000. The defendant alleged exceptions.

*J. P. Sweeney,* for the defendant.

*W. R. Scharton,* for the plaintiff.

BRALEY, J. The only questions on the record are whether the defendant's requests for rulings, that the evidence is insufficient to overcome the presumption that in all the defendant said and did he acted under the influence of natural affection and for what he conceived to be the real good of his son, and that "upon all the evidence in the case the plaintiff is not entitled to recover,"

should have been given. The plaintiff sues her father-in-law for alienation of her husband's affections and for enticing him to leave her home whereby she lost his "company, society, aid, and assistance." To entitle her to go to the jury she was required to show that the defendant's conduct was actuated by malice, and that through his efforts her husband's affections were alienated, and he was induced to separate from her. A father from parental affection may advise his son to discontinue the marital relation, and no action lies if such advice, honestly given, results in a separation. But if because of hostility and ill will to his son's wife he procures the separation, her conjugal rights are invaded, justification fails, malice is proved and damages may be recovered. *Geromini* v. *Brunelle*, 214 Mass. 492, and cases cited. *Nolin* v. *Pearson*, 191 Mass. 283.

The question ordinarily is one of fact. If not expressly conceded, the following facts were uncontroverted. The plaintiff's husband, a man of mature years,* associated in business with the defendant, married without the knowledge or assent of his father. It was not until two weeks after marriage that the husband and wife called at the defendant's home, where she was not welcomed but coldly received, the defendant being aggrieved because of his son's failure to inform him that he intended to be married. During the nine succeeding years, or until the son's death, the defendant's demeanor did not change, and he invariably treated the plaintiff with stolid indifference. He never entered her home, or voluntarily engaged her in conversation, and refused to recognize her on the street even when accompanied by her husband. The defendant was a witness at the trial, and the jury could say from his attitude shown by argumentative replies to questions of counsel and of the court, as well as from the character of his evidence, that from the beginning he exhibited a positive dislike of the plaintiff, which as time went on seemed to have deepened into a feeling closely akin to hatred. It was within this setting that the jury could consider the evidence introduced by the plaintiff as to the defendant's purpose.

We shall not review the testimony in detail. It comprises

---

* "At the time of the marriage, both husband and wife were about thirty-three years of age."

nearly twenty-eight quarto pages. A reference to the material portions will suffice. The jury could find that for nearly six years the plaintiff and her husband dwelt in harmony and contentment. A change, however, in their relations then took place, initiated by the husband. Reproached by his wife, she testified, that "he told me the reason of the coldness was on account of his father; that he had to please one or the other, and that they were always nagging him to leave me, and it was not his fault; that he was between two fires; that he did not know just what to do; he did not know which one to please, the father or I." It appeared that, although there was no open matrimonial rupture, an interview with counsel purporting to act for her husband shortly followed. What then took place was for the jury. They could say that she was asked to consent to a divorce or some form of separation "in order to please his father." And that at a subsequent meeting her husband, when blamed for his conduct, replied that "he was forced to do it by his father." Nor does it seem to have been disputed that thereafter the husband and wife occupied separate rooms, and he began to absent himself for long periods. The defendant contended that his absence became necessary because of engagements as a travelling salesman. But the jury were at liberty to believe the plaintiff who testified that, upon asking the defendant where her husband was, he replied that "that was his business and not mine;" and that when in town during the last two years preceding his death he did not return to his home, but lived at his father's house where he sickened and died. It was also for the jury to determine whether after denying that his son was with him, and in response to the plaintiff's request that her husband should be sent back because "when he is sick, his place is at home," the defendant said, "he is mine, and I will keep him."

We need go no further. The jury manifestly would have been warranted in finding that through the defendant's efforts, inspired by ill will toward the plaintiff, her husband's affections were alienated and that he was induced to abandon his home and to live separate and apart from her. It follows that the requests for rulings were denied properly, and that the exceptions must be overruled.

*So ordered.*