MATILDA A. STATKUS *vs.* METROPOLITAN TRANSIT AUTHORITY.

Suffolk.  November 7, 1956. — December 10, 1956.

Present: WILKINS, C.J., RONAN, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Damages,* For tort.  *Practice, Civil,* New trial, Judicial discretion.

In an action by a woman for injuries to her knee and leg, a denial of a motion by the defendant for a new trial on the ground that an award of $14,000 damages was excessive could not be said to be an abuse of discretion in view of evidence presented at the trial of a compressed fracture, of pain and discomfort suffered, of casts applied, of physiotherapy and hospital and medical treatments given, and of the plaintiff's loss of about four and a half months of work as a clerk-typist.

TORT.  Writ in the Superior Court dated September 24, 1952.

The action was tried before *Donahue, J.*

*James C. Roy,* for the defendant.

*Thomas B. Shea,* for the plaintiff.

CUTTER, J.   This is an action of tort to recover for in-
juries sustained by the plaintiff when alighting from a bus
of the defendant.   There was a verdict for the plaintiff for
$14,000.   The defendant filed a motion for a new trial on
the grounds that the verdict was against the evidence and
the weight of the evidence and that the damages were ex-
cessive.   The motion was denied and the defendant duly ex-
cepted.   The case is here on the defendant's bill of excep-
tions.

At the argument and in its brief, the defendant did not
greatly press its contention that the trial judge abused his
discretion in denying a new trial on the issue of liability.
The evidence on the issue of the defendant's negligence
(which it will serve no useful purpose to review here) as
disclosed by the record does not seem convincing.   However,
we clearly cannot say that, on that issue, the trial judge, in
denying the motion for a new trial, exceeded the limits of
his discretion.

A more serious question is presented by the contention
that the damages awarded were excessive.   The evidence
most favorable to the plaintiff disclosed that the plaintiff
on May 29, 1952, suffered the injuries here involved.   On
that day at the outpatient department of the Brighton
Marine Hospital she complained of pain in the left knee
and upper leg.   X-rays showed a compressed fracture of
the left lateral plateau and a long leg cast was applied.   Be-
tween May 29 and June 2, she was "in miserable pain"
and until June 15 she needed a wheel chair.   Thereafter she
used a crutch for a period.   She had difficulty sleeping.   Ad-
justments of the cast were made throughout June and July,
1952, and she had two successive changes of cast.   She was
given physiotherapy on twenty-four days in July, August
and September.   In October, 1952, a one-quarter inch en-
largement of the joint over the patella was noted and she
still walked with a slight limp, which then was getting less
all the time.   She had pain when going upstairs, which re-
curred occasionally.   She had further treatment in Novem-
ber.   Her last hospital visit was on March 16, 1953, when

examination revealed full range of motion, no pain and in-
tact ligaments. At the time of the trial in December, 1955,
the plaintiff said that her leg "still swells up when I put
my weight on it any length of time" and on rainy or damp
days. On occasion, she had to wear bandages or elastic
supports for a few days. She also was treated by a physician
(who was not called as a witness) occasionally in her home
or in his office.

The plaintiff returned to work in the last week of Sep-
tember, 1952, working part time for three weeks and there-
after full time. She lost three weeks of work in March, 1953,
because she "had a terrific pressure on" her left foot. Her
annual salary as a clerk-typist at the Army Base where she
worked was $2,950. In all, she lost about four and a half
months of work. There was no evidence of the cost of her
hospital and medical treatment.

Giving weight to every permissible inference from the evi-
dence already summarized, the verdict, on the record before
us, seems large. It was the duty of the trial judge to set
the verdict aside if he found it "greatly disproportionate to
the injury proved" after considering fairly and in an im-
partial and objective manner the applicable standards of
reasonableness under the circumstances, or if in his sound
judgment a miscarriage of justice would otherwise result.
See *Bartley* v. *Phillips*, 317 Mass. 35, 41–42.

If the trial judge had set this verdict aside as dispro-
portionately high, this court would have felt, on this record,
that he was well justified in doing so. It is quite another
thing, however, for this court to say that a judge has abused
his discretion in refusing to set aside such a verdict. "In
this court as an appellate tribunal an award of damages must
stand unless to . . . permit it to stand was an abuse of dis-
cretion . . . amounting to an error of law," which our de-
cisions for this purpose have defined as judicial action that
"no conscientious judge, acting intelligently, could honestly
have taken." See cases cited in *Bartley* v. *Phillips*, *supra*,
at pages 43–44. We cannot say that there was this type of
error on the part of the trial judge who heard and saw the

witnesses. *Kinnear* v. *General Mills, Inc.* 308 Mass. 344, 349. *Giblin* v. *Lincoln Park Amusement Co.* 318 Mass. 781. See *Growers Outlet, Inc.* v. *Stone,* 333 Mass. 437, 444.

*Exceptions overruled.*