KATHERINE SNOWDEN POULOS *vs.* GEORGE POULOS
& another.

Middlesex.    December 8, 1966. — January 13, 1967.

Present: WILKINS, C.J., SPALDING, CUTTER, & REARDON, JJ.

*Alienation of Affections. Parent and Child. Practice, Civil,* Ordering
verdict.

In an action by a wife against the mother of her husband for alienation
of his affection for the plaintiff, conclusions that the defendant seri-
ously abused and so destroyed her natural parental privilege, brought
about a separation of the plaintiff and her husband, and was liable
to the plaintiff were warranted by evidence of a conversation be-
tween the defendant and the plaintiff and her husband the day following
their marriage in which the defendant characterized their marriage as
"a disgrace," of the defendant's repeated attempts to induce her son to
return home to his parents, of his return home the next day after such
efforts, of the defendant's activities in keeping her son away from the
plaintiff after he had left her, and of his state of mind of submission to
his parents' will.    [607–608]
In an action of tort joining two persons as defendants as permitted by
G. L. c. 231, § 4A, with a declaration containing a separate count against
each defendant, a single motion on behalf of both defendants "that . . .
the Court direct the Jury to return a verdict in their, the defendants'
favor" was construed and dealt with by this court as if each defendant
had filed a separate motion that a verdict be directed in his favor on
the count against him.    [608]
In an action by a wife against the father of her husband for alienation
of his affection for the plaintiff, a conclusion that the defendant seri-
ously abused and so destroyed his natural parental privilege and was
liable to the plaintiff was not warranted by the evidence, although the
defendant was far from happy about his son's marriage and sought to
influence him on the day after it took place to leave the plaintiff and
return to his parents' home, and the son, influenced by his parents'
attitude, did so two days after his marriage and never returned to live
with the plaintiff.    [608–609]

TORT.   Writ in the Superior Court dated March 28, 1958.
The action was tried before *Moynihan,* J.

*Richard K. Donahue* for the defendants.

*Russell S. Riley* (*Roland E. Shaine* with him) for the
plaintiff.

SPALDING, J.   The declaration in this action of tort contains three counts.   Count 1 is against George Poulos, alleging loss of consortium and alienation of the affections of the plaintiff's husband, Peter Poulos.   Count 2, containing similar allegations, is against Georgia G. Poulos.   Count 3 is against George and Georgia, alleging that the loss of consortium and alienation of affections was accomplished pursuant to a conspiracy.   There was a verdict for the plaintiff on each count.   The third count having been waived, the questions for decision are whether the judge erred in denying the defendants' motion for a directed verdict and their motion for a new trial.

We summarize the evidence as follows: The plaintiff first met Peter Poulos, the defendants' son, in September, 1956. Peter told her that he was twenty-eight years old.   The plaintiff, a divorcee and the mother of two children, was then aged thirty-one.   Peter at that time was a student and shared an apartment in Boston with three other men.   The plaintiff also lived in an apartment in Boston which she shared with another woman.   In January, 1957, the plaintiff and Peter began "going steady."   While the plaintiff was in Florida in early March, Peter sent her many letters expressing his love for her.   They made plans to get married in May and Peter told the plaintiff that he would like to adopt her four year old daughter.   On one occasion in the latter part of March the plaintiff and Peter had sexual relations.

On April 26, 1957, the couple applied for a marriage license in Hyannis, stating, which was not the fact, that they resided there.   On May 2, they returned to Hyannis.   On the following day, because the plaintiff believed she was pregnant, she and Peter consulted a physician, who confirmed her belief.   Later that day they were married. They remained in Hyannis until Sunday, May 5, when they returned to an apartment in Boston which they had rented.

In the early afternoon of May 5, two days after the marriage, Peter stated that he was going to visit his parents and would return at 3:30 P.M.   He left the apartment but

did not return. After numerous calls to the defendants' home in Belmont, the plaintiff reached Peter by telephone at nine thirty that evening. During the conversation, which was admitted in evidence only to show Peter's state of mind, Peter said to the plaintiff, "Kay, I'm never going to see you again. My family will not put up with this marriage, and you do as they have told you. You'll have to call dad's lawyer."

Peter never lived again with the plaintiff, although he did make sporadic support payments to her. The plaintiff gave birth to a daughter, Mary Ann, in December, 1957. The first time Peter saw Mary Ann was in June, 1961, and he continued to see the child weekly until August, 1962. Shortly thereafter, in a conversation admitted only to show Peter's state of mind, Peter told the plaintiff that "he was sorry, but . . . he was not going to see . . . [the plaintiff or Mary Ann] any more, that his father found out that he had been coming down to see Mary Ann and that he was wild about it . . . [Peter] was sorry and he said . . . '[T]hat's the way it's got to be, Kay.' "

1. We deal first with the count against Georgia Poulos, Peter's mother. The evidence against Georgia is as follows: On Saturday, May 4, 1957, the day after the marriage, the plaintiff and Peter were on the beach near the cottage where they were staying. Georgia appeared on the beach and said to the plaintiff, "This marriage is a disgrace. We will let it ride and see what we can do about it." She then said to her son, "You must come home now. Your father wants to see you. You've got to come home." After the plaintiff and Peter had returned to the cottage, Georgia again appeared and said to Peter, "You must come home to see your father. He sent me down here to get you. You've got to come home." Peter said, "We'll come home when our honeymoon is over," and Georgia left. She returned to the cottage seven times, however, to implore that Peter listen to her and go home to his father. Later that day, Georgia called the plaintiff and asked her to promise that they "would leave the next morning and have Peter

come home to his father.'' The next evening, when the plaintiff was trying to reach Peter by telephone at his parents' home, Georgia answered and told her not to call again and not to come to their home, and that Peter was going away with his father for a few days. ''You call our lawyer. This marriage is not going to be.'' After that time, Georgia made no attempt to see or speak with either the plaintiff or Mary Ann. Georgia contends that this evidence was insufficient to show that her actions were motivated by anything more than a natural parental duty, or that her actions caused Peter to separate from the plaintiff.

In an action of this kind, it must be shown that the defendant intended to cause a separation between the plaintiff and the plaintiff's spouse. Proof that the defendant only gave honest advice is not enough. *Tasker* v. *Stanley*, 153 Mass. 148, 150. *Geromini* v. *Brunelle*, 214 Mass. 492. And because the rights and the corresponding duties of a parent are much greater than those of a stranger, stronger evidence is required to maintain an action against a parent. *Multer* v. *Knibbs*, 193 Mass. 556. There it was said by Sheldon, J., at page 557 that, ''It is proper for . . . [a parent] to give to his . . . [child] such advice and to bring such motives of persuasion or inducement to bear upon . . . [him] as he fairly and honestly considers to be called for by . . . [the child's] best interests.'' Thus a parent in situations of this sort has a privilege. But, as Professor Prosser has said, ''The privilege is a qualified or limited one, similar to that found in cases of defamation, and it is forfeited when the primary purpose of the defendant is something other than the benefit of the . . . [child] such as ill will toward the plaintiff . . . or where the interference is reckless, without proper investigation, or 'from an ill regulated mind not sufficiently cautious before it occasions the injury.' In short the parents, while they are not required to be pleasant to . . . [their child's spouse], and are aided by a strong inference of proper motives, are privileged to interfere only to the extent that a reasonable man would do . . . under the circumstances.'' Prosser, Torts

(3d ed.) pp. 901–902. And the burden of proving that the defendant acted from improper motives is upon the plaintiff. There is, to be sure, language in our cases (see e.g. *Multer* v. *Knibbs,* 193 Mass. 556, 558–559) to the effect that the parent's privilege may be destroyed only by proof of malice or ill will. But, as the quotation from Prosser shows, the privilege may be destroyed by proof that it has been seriously abused. With this view we agree. Cf. in the law of defamation, *Galvin* v. *New York, N. H. & H. R.R.* 341 Mass. 293, 298.

The distinction between what a parent may do and say for what he believes to be for his child's best interest, on the one hand, and conduct that may be unreasonable or actuated by improper motives, on the other, is easier to state than apply. Often the good and improper motives of a parent may be closely related and both may be operative in inducing the separation. What Georgia said and did may have been actuated by a desire to protect Peter from the consequences of a hasty and ill considered marriage. But her characterization of the marriage as "a disgrace," her repeated attempts (nine all told) to induce Peter to return home, and her activities in keeping Peter away from the plaintiff after he had left her, are evidence tending to show that she may have done more than was reasonable in the circumstances. A finding was warranted that Georgia acted with such aggressiveness and vehemence as to constitute an abuse of the privilege. See *Lanigan* v. *Lanigan,* 222 Mass. 198.

Georgia's second contention is that "there is no evidence of parental pressure which causally effected the separation." We do not agree. Her persistent efforts to persuade Peter to return to his father were sufficient evidence of pressure. And the fact that Peter left the plaintiff within one day of those efforts, coupled with the evidence that his state of mind was one of submission to his parents' will, was sufficient proof that Georgia's efforts were a controlling cause of the separation. The plaintiff was not required to show that Georgia's actions were the sole cause of

the separation. *Hadley* v. *Heywood,* 121 Mass. 236, 239. *Labrie* v. *Midwood,* 273 Mass. 578, 581. *Whittet* v. *Hilton,* 335 Mass. 164, 167.

2. Both Georgia and George presented a single motion in which they asked "that . . . the Court direct the Jury to return a verdict in their, the defendants' favor." The plaintiff invokes the familiar rule that a "general motion for a directed verdict should be denied if the plaintiff was entitled . . . to go to the jury upon any one of the counts." *Dillon* v. *Barnard,* 328 Mass. 53, 55, and cases cited. Thus, it is argued, since the plaintiff was entitled to go to the jury on the count against Georgia, the motion should be denied. Prior to G. L. c. 231, § 4A, inserted by St. 1943, c. 350, § 1, it would not have been possible for the plaintiff to proceed against George and Georgia in separate counts in the same declaration. Separate actions would have had to be brought. We think that a fair construction of the defendants' motion, although general, was that each defendant was asking that a verdict be directed with respect to the count against him or her. In all the situations where the rule of the *Dillon* case has been applied it will be found that a single defendant has made a general motion with respect to a multiple count declaration which concerned him alone. We are not disposed to extend the rule to a case like the present involving separate counts against separate defendants. The better practice in a situation of this sort is for each defendant to present a separate motion.

We turn, therefore, to the merits. There was testimony admitted without objection or limitation, that George sent Georgia to Hyannis on May 4, 1957, the day after the marriage, and that Georgia said to Peter on that occasion "You must come home now. Your father wants to see you." George testified that he had "sent . . . [his] wife to the Cape for . . . [his] son." And two days after the marriage Peter went to George's house and never returned to live with the plaintiff. There was also evidence that in the Barnstable Court House in June, 1958, George said to the plaintiff, "Peter is not paying you any of this money. . . .

You'll never get in our family and you'll never get any of our money or his money."

The foregoing evidence shows that George was far from happy about Peter's marriage and sought to influence him to leave the plaintiff. And Peter's evidence as to his state of mind indicates that he was influenced by the attitude of both George and Georgia. Still, in the case of George, we are of opinion that his conduct was not such as to constitute such a serious abuse of the parental privilege as to destroy it. We are of opinion that it was error to submit the count against George (count 1) to the jury.

3. The motion for a new trial alleged that the verdict was against the law and the weight of the evidence and that the damages were excessive. Since the verdict on count 1 cannot stand, we shall consider the motion only with respect to count 2. We find no abuse of discretion in the judge's denial of the motion. *Hartmann* v. *Boston Herald-Traveler Corp.* 323 Mass. 56, 59–61, and cases cited. *Statkus* v. *Metropolitan Transit Authy.* 335 Mass. 172, 174.

4. The exception to the denial of the motion for a directed verdict as to count 1 is sustained and judgment is to be entered for the defendant George Poulos on that count. The exceptions relating to count 2 are overruled.

*So ordered.*