[No. 44673. En Banc. July 31, 1980.]

THOMAS WYMAN, *Petitioner,* v. DONALD WALLACE,
ET AL, *Respondents.*

*Jon Marvin Jonsson,* for petitioner.

*Nuxoll, Stroh, Newsum & Funk, P.S., Inc.,* and *Jay Nuxoll,* for respondents.

UTTER, C.J.—An opinion in this case was reported in *Wyman v. Wallace,* 91 Wn.2d 317, 588 P.2d 1133 (1979). We granted reconsideration, and now vacate our earlier opinion and affirm the Court of Appeals decision abolishing actions for alienation of a spouse's affections in this state.

Plaintiff Thomas Wyman obtained a judgment against defendant Donald Wallace for alienation of the affections of Mrs. Michele Wyman. Defendant Wallace appealed, and the Court of Appeals in a per curiam decision held that the cause of action for alienation of a spouse's affections should be abolished, and ordered the action in this case dismissed with prejudice. *Wyman v. Wallace,* 15 Wn. App. 395, 549 P.2d 71 (1976). Plaintiff Wallace then petitioned for review by this court, claiming that the action for alienation of a spouse's affections should not be eliminated judicially, and should continue to exist until it has been abolished by the legislature.

The action for alienation of a spouse's affections is a judicially created doctrine in this state. The action existed at common law, and was adopted into the jurisprudence of this state. *See, e.g., Beach v. Brown,* 20 Wash. 266, 55 P. 46

(1898). The legislature of this state has not specifically provided for an action for alienation of affections.

■ No doubt has ever been expressed regarding the courts' power to abolish this judicially created action for alienation of a spouse's affections. Our original decision in this case recognized that "a rule of law which has its origins in the common law and which has not been specifically enacted by the legislature may be modified or abolished by the courts when such revision is mandated by changed conditions." *Wyman v. Wallace,* 91 Wn.2d at 318–19. *See also Freehe v. Freehe,* 81 Wn.2d 183, 189, 500 P.2d 771 (1972) (question of abolition of rule of interspousal tort immunity is properly a matter for the courts and need not await legislative action since "the rule is not one made or sanctioned by the legislature, but rather is one that depends for its origins and continued viability upon the common law"). Every jurisdiction that has thus far abolished the tort of alienation of a spouse's affections has done so legislatively.[1] However, the mere fact that the legislatures in these other states abolished the cause of action before the question of abolition was properly presented to the respective courts,

---

[1]Ala. Code tit. 6, § 6-5-331 (1977); Ariz. Rev. Stat. § 25-341 (West Supp. 1979-80); Cal. Civ. Code Ann. § 43.5 (West 1954); Colo. Rev. Stat. § 13-20-202 (1973); Conn. Gen. Stat. Ann. § 52-572b (West Supp. 1980); Del. Code Ann. tit. 10, § 3924 (1974); Fla. Stat. Ann. § 771.01 (West 1964); Ind. Code Ann. § 34-4-4-1 (Burns Supp. 1979); Me. Rev. Stat. Ann. tit. 19, § 167 (West Supp. 1979-80); Md. Cts. & Jud. Proc. Code Ann. § 5-301(a) (1974); Mich. Stat. Ann. § 27A.2901 (1980); Minn. Stat. Ann. § 553.02 (West Supp. 1980); Mont. Rev. Code Ann. § 27-1-601 (1979); Nev. Rev. Stat. § 41.380 (1979); N.J. Stat. Ann. § 2A:23-1 (West 1952); N.Y. Civ. Rights Law § 80-a (McKinney 1976); Okla. Stat. Ann. tit. 76, § 8.1 (West Supp. 1979-80); Ore. Rev. Stat. § 30.840 (1979); Pa. Stat. Ann. tit. 48, § 170 (Purdon 1965); Vt. Stat. Ann. tit. 15, § 1001 (Supp. 1979); Va. Code § 8.01-220 (1977); Wis. Stat. Ann. § 248.01 (West Supp. 1979-80); Wyo. Stat. Ann. § 1-23-101 (1977).

The Illinois legislature has not technically abolished the action, but it has limited the plaintiff to actual damages. Ill. Ann. Stat. ch. 68, § 35 (Smith-Hurd 1959).

The action for alienation of affections apparently never existed in Louisiana. *Moulin v. Monteleone,* 165 La. 169, 178, 115 So. 447 (1927); *Ohlhausen v. Brown,* 372 So. 2d 787, 788 (La. Ct. App. 1979).

does not mean that every state court must wait for the legislature to focus its attention on this subject. *See, e.g., Doe v. Doe,* __ Mass. __, 390 N.E.2d 730, 732–33 (1979) (recognizing that the state courts have the power to abolish the tort of alienation of affections); *see also Bearbower v. Merry,* 266 N.W.2d 128, 129, 134 (Iowa 1978) (recognizing that the question of abolition of the action for alienation of affections is a matter that can be decided by the state courts, and then holding that the action will continue to exist). In the instant case, the question of abolition of the action has been squarely presented to the courts of this state and, since the action was created judicially, the courts have the power to resolve this question.

 Plaintiff Wyman urges, however, that the courts should decline to exercise this power in the present case because the trial court's decision was argued on appeal without any record of the trial court proceedings. He contends that the absence of any trial record leaves the appellate courts without any factual basis for deciding whether or not to continue the action for alienation of a spouse's affections. In making a policy judgment such as the continuation of the doctrine of alienation of affections, it is certainly preferable to have a fully developed trial record. *Doe v. Doe, supra* at 731. However, trial courts and appellate courts can take notice of "legislative facts"—social, economic, and scientific facts that "simply supply premises in the process of legal reasoning." *Houser v. State,* 85 Wn.2d 803, 807, 540 P.2d 412 (1975); E. Cleary, *McCormick's Evidence* 759, 768–69 (2d ed. 1972). Under this doctrine, a court can take notice of scholarly works, scientific studies, and social facts. *See* E. Cleary, *supra* at 759, 768–69; *see, e.g., Planned Parenthood v. Danforth,* 428 U.S. 52, 71, 75, 49 L. Ed. 2d 788, 96 S. Ct. 2831 (1976); *Roe v. Wade,* 410 U.S. 113, 35 L. Ed. 2d 147, 93 S. Ct. 705 (1973); *Houser v. State, supra* at 807–09. This legislative fact doctrine is expressly recognized by both the state and federal rules of evidence. In establishing strict requirements for judicial notice of "adjudicative facts," the state and federal rules

carefully ensure that these requirements will not also restrict notice of "legislative facts." *See* ER 201(a), Comment; Fed. R. Evidence 201(a), Advisory Committee's note. As the commentaries to these rules explain, it is essential that courts have the unrestricted ability to employ judicially noticed "legislative facts" in formulating legal rules. Fed. R. Evidence 201(a), Advisory Committee's note; ER 201(a), Comment.

Judicial notice of legislative facts is frequently necessary when, as in the present case, a court is asked to decide on policy grounds whether to continue or eliminate a common law rule. ER 201(a), Comment; E. Cleary, *supra* at 759, 768–69. The application of the legislative fact doctrine in determining the parameters of a judicially created principle is illustrated by the United States Supreme Court's decisions concerning the common law rule that one spouse cannot testify against the other. In *Hawkins v. United States,*. 358 U.S. 74, 3 L. Ed. 2d 125, 79 S. Ct. 136 (1958), the court reaffirmed the continuing viability of the privilege against adverse spousal testimony in the federal courts. The court in *Hawkins* concluded that the underlying policy of preserving marital harmony was reasonable and necessitated the continuation of the privilege against adverse spousal testimony. *Hawkins,* at 77–79. As commentators pointed out, the *Hawkins* decision rested upon the court's judicial notice of the "legislative fact" that adverse spousal testimony has the effect of disrupting marital harmony and alienating one spouse from the other. E. Cleary, *supra* at 759; Davis, "A System of Judicial Notice Based on Fairness and Convenience," in *Perspectives of Law* 69, 83 (R. Pound ed. 1964). Recently, the United States Supreme Court in *Trammel v. United States,* 445 U.S. 40, 63 L. Ed. 2d 186, 100 S. Ct. 906 (1980) modified its *Hawkins* rule so as to allow adverse spousal testimony if the witness spouse chooses to testify. The court in *Trammel* explained that the modern understanding of marriages amply demonstrates that the adverse spousal privilege does not further the

underlying goal of preserving marital harmony. The *Trammel* court took notice of the social fact that "[w]hen one spouse is willing to testify against the other in a criminal proceeding—whatever the motivation—their relationship is almost certainly in disrepair; there is probably little in the way of marital harmony for the privilege to preserve." *Trammel,* at 52. The court in *Trammel* also took notice of treatises and articles commenting on the privilege against adverse spousal testimony. *Trammel,* at 43–45, 51–52.

In abolishing actions for alienation of a spouse's affections, the Court of Appeals in the present case similarly based its decision on judicial notice of the realities of a marital relationship. Explaining that the doctrine of alienation of affections is founded upon the policy of preserving marital relationships and preventing third–party interference with one spouse's mental attitude to the other spouse, the Court of Appeals took notice of the social fact that "a viable marriage is not one where the 'mental attitude' of one spouse towards the other is susceptible to interference by an outsider." *Wyman v. Wallace,* 15 Wn. App. at 400. As the United States Supreme Court's decision in *Trammel* demonstrates, the Court of Appeals had the power to take notice of this social fact in reaching its legal conclusions. *See also Planned Parenthood v. Danforth, supra* at 71 (concluding that a statutory requirement of spousal consent to abortion does not further the underlying goal of marital harmony because "[n]o marriage may be viewed as harmonious or successful if the marriage partners are fundamentally divided on so important and vital an issue" as abortion); *Freehe v. Freehe,* 81 Wn.2d 183, 187, 500 P.2d 771 (1972) (doctrine of interspousal tort immunity does not further underlying goal of preserving the peace and tranquility of the home). In resolving the present case, the Court of Appeals also relied heavily on treatises and articles examining the nature of the action for alienation of affections. *Wyman v. Wallace,* 15 Wn. App. at 398–401.

The court was also entitled to take notice of these materials. *See, e.g., Trammel v. United States, supra* at 43–45, 51–52.

The combination of judicially noticed facts concerning the marital relationship and scholarly works on the subject of alienation of affections enable an appellate court to resolve the issues in this case even without a trial court record. Accordingly, the Court of Appeals did not err in deciding this case without the benefit of a factual record.

 The Court of Appeals was furthermore correct in concluding that actions for alienation of a spouse's affections should be abolished in this state.[2] The Court of Appeals explained that the action should be eliminated for the following reasons: (1) The underlying assumption of preserving marital harmony is erroneous; (2) The judicial process is not sufficiently capable of policing the often vicious out–of–court settlements; (3) The opportunity for blackmail is great since the mere bringing of an action could ruin a defendant's reputation; (4) There are no helpful standards for assessing damages; and (5) The successful plaintiff succeeds in compelling what appears to be a forced sale of the spouse's affections. We agree that these considerations are valid and call for the abolition of the action for alienation of a spouse's affections.

The decision of the Court of Appeals is reinstated, and the judgment of the trial court is reversed.

BRACHTENBACH, HOROWITZ, DOLLIVER, and WILLIAMS, JJ., concur.

---

[2]As the Court of Appeals was careful to point out, this case presents only the question of the continuing viability of actions for alienation of a spouse's affections, and does not raise the related issue of the continued vitality of actions for alienation of a child's affections. *Wyman v. Wallace,* 15 Wn. App. at 400 n.4; *see, e.g., Strode v. Gleason,* 9 Wn. App. 13, 510 P.2d 250, 60 A.L.R.3d 924 (1973). This case also does *not* present the analogous question of the continuing viability of actions for criminal conversation. *See, e.g., Almstrom v. Community Personal Guidance Center,* 22 Wn. App. 534, 590 P.2d 370 (1979) (relying on the logic of our earlier decision in *Wyman v. Wallace, supra,* to conclude that criminal conversation is still a viable cause of action).

HICKS, J. (dissenting)—I find no reason to depart from the court's opinion following the first hearing of this matter. *Wyman v. Wallace,* 91 Wn.2d 317, 588 P.2d 1133 (1979). Nothing has changed except the personnel of the court. The record on appeal is the same—as nonexistent as in the first hearing. The oral presentation to the court seemed no more persuasive the second time around. The fact of the matter is that but for the fortuitous event of a change of one member on the court, it is unlikely that reconsideration in this matter would have been granted in the first place.

It is to be noted that the action for alienation of affections has been part of the common law of this state from a time before Washington was a state—from territorial days. The abrogation of such a long-standing cause of action effects a substantial change in the state's public policy. It would seem this should not be lightly undertaken.

The majority opinion, at some length, explains that the court has the power to abolish a common law cause of action not specifically adopted by enactment of the legislature. I agree. The court has such power with or, as in this case, without compelling reason for so doing. We should, however, be hesitant in discarding a cause of action of such antiquity unless it has truly become an anachronism—a determination better made by the legislature than this court.

As acknowledged by the majority, no court in the United States has previously abolished the cause of action for alienation of affections. Where such action has been taken, the legislature has been the entity effecting the change in the state's policy, as it should here if there is to be a change. Our legislature with its 147 members, representing as it does all facets of society, is better able than this court to make the value judgment necessary in deciding whether the action for alienation of affections is inappropriate to current mores and circumstances. Particularly is this true considering the record in this case—inadequate to the point of nonexistence.

The majority's action here is not a matter of perfecting the law by fashioning a remedy where none previously existed in order to correct an ongoing social wrong. This court has been in the forefront of such judicial innovation, as was noted in the first opinion in this matter. *Wyman v. Wallace, supra.* It is simply out of character for the court to deny a remedy where a wrong continues to exist.

The gravamen of the cause of action for alienation of affections is interference with consortium. In another context, this court recently expanded this state's tort law by holding that in a proper case loss of consortium may be a compensable item in a damage action for personal injury. *Lundgren v. Whitney's, Inc.,* 94 Wn.2d 91, 614 P.2d 1272 (1980). That decision buttresses my contention that the majority's rationale for abolishing the cause of action for alienation of affections rests on no firmer basis than the personal predilections of its members. That may be reason enough for action by a legislative body; it is highly dubious that it provides sufficient occasion for a court to act.

If, as seems apparent, the majority is determined to inter the action for alienation of affections, it should at least await a case supported by some record before pronouncing the final rites.

I dissent.

WRIGHT, J., concurs with HICKS, J.

STAFFORD, J. (concurring in the dissent)—I agree with both the majority and dissent that this court has the power to abolish a common law cause of action if it has not been specifically adopted by legislative enactment. Nevertheless, the question remains whether the court should exercise that power on the existing record. I agree with the dissent that it should not for two reasons.

First, the majority totally rejected a legal principle grounded in public policy since this state was a territory. The rejection is based upon a very cursory observation that

times have changed thereby causing recent changes in public policy. It seems to me, however, that before we adopt such a basic about–face in the common law we should have more than a summary explanation of why the doctrine should be abolished.

Second, while the majority seems to concede an inadequate record, it refers to so–called legislative and authoritative "facts" to fill the hiatus. The majority opinion never explains, however, what "legislative facts" it relies on. Further, I am concerned that the majority's analysis of the method employed to use "legislative facts" results in giving courts the power to review virtually everything, anytime, with any facts it chooses to rely on. I agree courts have taken "legislative facts" into account in a number of cases, but I am not aware of any opinion that has gone as far in creating and defining the concept. At the very least the principle must be more limited in scope and far more specifically outlined.

Rosellini, Wright, and Hicks, JJ., concur with Stafford, J.

Reconsideration denied September 25, 1980.