Theodore P. FUNDERMANN, Appellee,

v.

Gordon MICKELSON, Appellant.

No. 65064.

Supreme Court of Iowa.

April 15, 1981.

As Amended May 6, 1981.

Rehearing Denied May 7, 1981.

Robert E. Beebe and Michael W. Ellwanger of Kindig, Beebe, Rawlings, Nieland & Killinger, Sioux City, for appellant.

John T. O'Brien and Thomas S. Mullin of O'Brien & Galvin, Sioux City, for appellee.

HARRIS, Justice.

We have become convinced that there is inherent and fatal contradiction in the term "alienation of affections." The alienation belies the affection. Suits for alienation are useless as a means of preserving a family. They demean the parties and the courts. We abolish such a right of recovery and, hence, reverse and set aside the trial court's judgment.

It is scarcely necessary to relate the facts. As is typical, there was ample defense evidence that the marriage between the plaintiff and his former wife, Susan, had deteriorated to a point of no return long prior to defendant's involvement. Predictably, there was also the plaintiff's evidence that the marriage was not unusually or hopelessly stormy until Susan's amorous affair with defendant. There have been two marriage dissolutions and Susan is now married to defendant.

I. The trial court, as mandated by our prior decisions, *Bearbower v. Merry*, 266 N.W.2d 128 (Iowa 1978), submitted these conflicting versions of the evidence for the jury's resolution. In our past reviews of alienation awards we have dutifully acknowledged and yielded to the jury's prerogative in establishing facts from conflicting evidence. Iowa R.App.P. 14(f)(1).

Our system of establishing facts, however, has a strong, sometimes it seems an irresistible, tendency to break down in alienation cases. This is because of the incendiary effect of the usual evidence in such cases. Under the established theory of recovery, the jury should first undertake to decide which came first, the marriage breakdown or the misconduct. But juries necessarily face that first determination after learning of conduct of which they strongly disapprove and which society condemns.

It is illogical to pretend that juries can dispassionately resolve the factual disputes in alienation suits in the same manner as in other cases. There is a strong indication the jury was unable to do so here because it apparently rejected the testimony of plaintiff's and Susan's own daughter, Kathleen Neumiller. She testified she left home in 1974, before her final year of high school. This was before plaintiff says Susan became involved with defendant. Kathleen said, "I didn't feel there was any love in the family. I didn't feel there was any love toward me or toward each other, my mother and father."

But we certainly should not condemn juries for the impossible difficulty they face in sorting out the contested facts in alienation suits. It is the theory of recovery that is flawed. That theory was rooted in ideas we have long since renounced, involving wives as property. The action has survived in the hope that it affords some protection to existing family relationships. But this lofty hope has proven illusory. Human experience is that the affections of persons who are devoted and faithful are not susceptible to larceny—no matter how cunning or stealthful. And it is folly to hope any longer that a married person who has become inclined to philander can be preserved within an affectionate marriage by the threat of an alienation suit. If we did

pretend that a would-be paramour would be thereby dissuaded, a substitute is likely to be readily found.

Increasingly, the states reject and renounce the right of an alienation recovery because the existence of such a right is itself a slander on marriage. As pointed out in *Bearbower*, 266 N.W.2d at 137 (dissenting opinion):

> Still another [reason for abolishing the suit] is the peculiar light which the whole proceeding throws on the nature of marriage, leaving one with the conviction that the successful plaintiff has engaged in something which looks very much like a sale of his wife's affections. Most significantly of all, the action for alienation is based on psychological assumptions that are contrary to fact.

Quoting H. Clark, Law of Domestic Relations, § 10.2 at 267 (1968).

II. There is an unmistakable trend away from allowing alienation suits. While *Bearbower* was under submission Minnesota, by statute, abolished the right. Since then Georgia has. Not mentioned in *Bearbower* is the fact that Rhode Island had joined the states which limit recoveries by short statutes of limitation. Washington has abolished the right by judicial pronouncement. So now, in eighteen states and the District of Columbia, alienation actions have been totally abolished by statutes. Ariz.Rev. Stat.Ann. § 25–341 (West Supp. 1980–81); Cal.Civ.Code § 43.5 (West 1954); Colo.Rev. Stat. § 13–20–202 (1973); Conn.Gen.Stat. Ann. § 52–572b (1977); D.C.Code Encycl. § 16–923 (West Supp. 1978–79); Del.Code Ann. tit. 10, § 3924 (1975); Ga. Code Ann. § 105–1203 (Harrison Supp. 1980); Ind.Stat. Ann. § 34–4–4–1 (Burns Supp. 1980); Me. Rev.Stat.Ann. tit. 19, § 167 (West Supp. 1980–81); Md.Ann.Code, Courts and Judicial Proceedings § 5–301(a) (1980); Mich. Stat.Ann. § 600.2901 (1968); Minn.Stat. Ann. § 553.01 (West Supp. 1980); Mont. Code Ann. § 27–1–601 (1979); Nev.Rev. Stat. § 41.380 (1979); Or.Rev.Stat. § 30.840 (1975); Va.Code § 8.01–220 (1977); W.Va. Code § 56–3–2a (Michie Supp. 1980); Wis. Stat.Ann. § 238.01 (West Supp. 1980–81); Wyo.Stat. § 1–23–101 (1977).

In Louisiana, the cause of action has never existed. *Moulin v. Monteleone*, 165 La. 169, 178, 115 So. 447, 451 (1927), *accord, Ohlausen v. Brown*, 372 So.2d 787, 788 (La. Ct.App.1979).

Recently, Washington became the first state to judicially abolish the action for alienation of a spouse's affection. *Wyman v. Wallace*, 94 Wash.2d 99, 104, 615 P.2d 452, 455 (1980).

Six states deny the recovery of money damages in alienation actions. Ala.Code tit. 6, § 5–331 (1978) (abolishes recovery for female 19 years or older) (injunction still permitted), *see Logan v. Davidson*, 282 Ala. 327, 330, 211 So.2d 461, 463 (1968); Fla.Stat. Ann. § 771.01 (West 1964); N.J.Stat.Ann. § 2A:23–1 (West 1952); N.Y.Civ. Rights Law § 80–a (Lawyers Coop.1974); Ohio Rev. Code Ann. § 2305.29 (Supp.1979); Vt. Stat.Ann. tit. 15, § 1001 (1976).

Three states, while retaining the suit, view it with some disfavor. *Ferriter v. Daniel O'Connell's Sons, Inc.*, —— Mass. ——, Mass.Adv.Sh. Sept. 19, 1980 at 2081–82, 413 N.E.2d 690 (alienation actions are disfavored); *Dube v. Rochette*, 110 N.H. 129, 130, 262 A.2d 288, 289 (1970) (action susceptible to abuse, but legislature's judgment to allow continuance of action must be respected); *Thompson v. Chapman*, 93 N.M. 356, 358, 600 P.2d 302, 304, *cert. denied*, 92 N.M. 675, 593 P.2d 1078 (N.M.Ct. App.1979) (would be abolished if court had authority to do so).

Two states have abolished the action with some exceptions. Okla.Stat.Ann. tit. 76, § 8.1 (West Supp. 1980–81) (action permitted only if spouse was incompetent or a minor); Pa.Stat.Ann. tit. 48, § 170 (Purdon 1965) (action can only be brought against a relative of wayward spouse).

Three states have shortened their statute of limitations on alienation actions to just one year. Ark.Stat.Ann. § 37–201 (Bobbs-Merrill Supp. 1979); Ky.Rev.Stat.Ann. § 413.140(1)(c) (Bobbs-Merrill Supp. 1978) (includes alienation actions); *Skaggs v. Stanton*, 532 S.W.2d 442, 443 (Ky.1975); R.I.Gen. Law § 9–1–14 (Bobbs-Merrill Supp. 1980).

One state limits recovery to just actual damages. Ill.Code Ann. ch. 68, § 35 (Smith-Hurd 1959).

Eleven states employ burden of proof requirements similar to that used by the Iowa court. *Compare Summerfield v. Pringle*, 65 Idaho 300, 308, 144 P.2d 214, 218 (1943) (defendant's action must be the controlling cause of the alienation); *Poulos v. Poulos*, 351 Mass. 603, 607, 222 N.E.2d 887, 891 (1967) (defendant's action must be the controlling cause of the alienation); *Hansen v. Strohschein*, 178 Neb. 367, 369, 133 N.W.2d 598, 599 (1965) (controlling cause); *Dube v. Rochette*, 110 N.H. 129, 130, 262 A.2d 288, 289 (1970) (controlling cause); *Lueg v. Tewell*, 572 S.W. 97, 102 (Tex.Civ.App.1978) (must be controlling cause) *with Bearbower v. Merry*, supra, at 130 (defendant's action must be the controlling cause of the loss of affection). *See Stanton v. Cox*, 162 Miss. 438, 450, 139 So. 458, 461 (1932) (direct interference by defendant must have caused the wayward spouse's infatuation with defendant); *Sutton v. Sutton*, 567 S.W.2d 147, 148 (Mo.Ct.App.1978) (plaintiff need only show causal connection between defendant's conduct and alleged loss); *Tice v. Mandel*, 76 N.W.2d 124, 129 (N.D.1956) (requires only causal connection); *Holloway v. Holloway*, 204 S.C. 565, 569, 30 S.E.2d 596, 597 (1944) (requires only causal connection); *Wilson v. Bryant*, 167 Tenn. 107, 113, 67 S.W.2d 133, 135 (1933) (plaintiff must show that defendant was the pursuer and not the pursued); *Sadleir v. Knapton*, 5 Utah 2d 26, 29, 296 P.2d 278, 280 (1956) (defendant's action must be resulting cause).

Four states employ more difficult burdens of proof. *Hunt v. Chang*, 594 P.2d 118, 123 (Haw.1979) (five-prong burden of proof); *Long v. Fischer*, 210 Kan. 21, 25–26, 499 P.2d 1063, 1067 (1972) (five-prong test for burden of proof); *Thompson v. Chapman*, 93 N.M. 356, 358, 600 P.2d 302, 303–04, *cert. denied*, 92 N.M. 675, 593 P.2d 1078 (N.M.Ct.App.1979) (plaintiff must show existence of affection and that defendant maliciously caused the alienation by direct interference); *Heist v. Heist*, 46 N.C.App. 521, 523, 265 S.E.2d 434, 436 (1980) (plain-tiff must show existence of genuine love and that malicious acts of defendant produced the loss).

One state, Alaska, has no reported case law on the issue.

It is sometimes suggested that the abrogation of a right, even a common-law right, should come from the legislature rather than from the courts. This suggestion was already laid to rest in *Bearbower*. In *Bearbower*, though we were in wide disagreement on the underlying and fundamental issue in the case, we were unanimous in believing it was for us and not for the legislature to end the right of this recovery if it were to be ended.

· Two other justifications are urged in favor of retaining alienation suits. It is suggested that the doctrine of *stare decisis* would be impugned by abolition of the doctrine in view of the recentness of our decision in *Bearbower*. But, as our majority opinion in *Bearbower* noted: "Of course it is our duty to monitor and interpret the common law, and to abandon antiquated doctrines and concepts. [Authorities.] The genius of the common law is its flexibility and capacity for growth and adaptation. [Authority.]" 266 N.W.2d at 129.

The doctrine of *stare decisis* was no deterrent to the Washington Supreme Court which, in the case of *Wyman v. Wallace*, supra, reconsidered its earlier opinion of 91 Wash.2d 317, 588 P.2d 133. On reconsideration the Washington court abolished the right to maintain alienation suits, a right it had expressly retained in its original opinion in the same case.

On other questions our court has not hesitated to re-examine and revise rules and doctrines, even those we have recently ratified. *See for example Bierkamp v. Rogers*, 293 N.W.2d 577 (Iowa 1980). And in *Kersten Co., Inc. v. Department of Social Services*, 207 N.W.2d 117 (Iowa 1973), notwithstanding a recent refusal to do so, we overturned a rule which had recognized governmental immunity in contract suits. We were strongly urged to continue the old rule for the sake of consistency. Rejecting the argument we said:

We have not been reluctant in the past to overrule prior decisions when we conclude they are wrong. *Stare decisis* is a valuable legal doctrine which lends stability to the law, but it should not be invoked to maintain a clearly erroneous result simply because that's the way it has been in the past. Certainly we should be as willing to correct our own mistakes as we are those of others. [Authorities.]

207 N.W.2d at 121.

There is also some suggestion that abolition of the suit is out of step with our pronouncements affirming a right to recover for loss of consortium. But, as pointed out in the *Bearbower* dissenting opinion, 266 N.W.2d at 137, there is nothing inconsistent in the allowance of the one and the abolition of the other. The right to recover for loss of consortium is a factor in assessing damages when underlying liability has been established in a personal injury suit. Renunciation of the right to recover for alienation proceeds from the belief there is no basis for the underlying liability.

In the last analysis we think the action should be abolished because spousal love is not property which is subject to theft. We do not abolish the action because defendants in such suits, need or deserve our protection. We certainly do not do so because of any changing views on promiscuous sexual conduct. It is merely and simply because the plaintiffs in such suits do not deserve to recover for the loss of or injury to "property" which they do not, and cannot, own.

REVERSED.

All Justices concur except ALLBEE, J., who concurs specially and REYNOLDSON, C. J., and LeGRAND, McGIVERIN, and SCHULTZ, JJ., who dissent.

ALLBEE, Justice (concurring specially).

Because I believe the tort of alienation of affections to be an anachronism, I join division II of the court's opinion abolishing that cause of action. The development of the common law includes the elimination of antiquated rights and remedies, and I am satisfied that the action abrogated today clearly falls within that class. I subscribe to the views expressed in the dissenting opinion in *Bearbower v. Merry*, 266 N.W.2d 128, 136–38 (Iowa 1978) (McCormick, J., dissenting); those views underlie my concurrence.

REYNOLDSON, Chief Justice (dissenting).

I dissent for all the reasons this court, less than three years ago, gave for rejecting the rationale the majority now adopts. *See Bearbower v. Merry*, 266 N.W.2d 128 (Iowa 1978). I believe juries are as capable of deciding alienation cases as any other type of case entrusted to them.

I. The majority generalizes that juries are incapable of dispassionately resolving the factual disputes in alienation cases because this jury "apparently rejected the testimony of plaintiff's and Susan's own daughter, Kathleen Neumiller," who said there was no love in the family. Until today we have always followed the rule that the jury is the sole judge of the credibility of the witnesses, *Smith v. Darling & Co.*, 244 Iowa 133, 141, 56 N.W.2d 47, 52 (1952), and that a witness's testimony need not be accepted as a verity, even where it is not contradicted, *Schmitt v. Jenkins Truck Lines, Inc.*, 170 N.W.2d 632, 643 (Iowa 1969).

This jury obviously believed the testimony of other disinterested witnesses who provided evidence that refuted Kathleen's testimony. They may have reasoned Kathleen's views were not shared by her twenty-year-old sister and her sixteen-year-old brother, who chose to remain with their father. Or the jury may have concluded Kathleen was merely attempting to justify her action in running away from home at age seventeen to live in her boyfriend's Minnesota home.

Nor is the majority's theory that jurors become emotional basket cases "after learning of conduct of which they strongly disapprove and which society condemns" any more viable. Logically, applied, this concept would require us to set aside most jury verdicts in criminal and intentional tort

cases. The majority's analysis also ignores those numerous alienation cases in which there is no sexual involvement, only a stubborn and spiteful parental decision not to cut the umbilical cord:

> Out of some 41 alienation cases reaching this court, 22 were prosecuted against immediate family members of a spouse, absent any allegations of sexual involvement. Seventeen were brought by the wife against one or both of the husband's parents.

*Bearbower*, 266 N.W.2d at 132 (citations omitted).

Trial court's instructions to this jury followed the Iowa State Bar Association's Uniform Jury Instructions. The jury was instructed the law imposes a duty on every person not to intentionally interfere with the relations between a husband and wife; that to do so is wrongful conduct. The burden was cast on this plaintiff to prove by a preponderance of the evidence that (1) defendant engaged in conduct with plaintiff's wife that was wrongful toward plaintiff, (2) plaintiff lost the affection and consortium of his wife, (3) defendant's conduct was a substantial factor in this loss, and (4) plaintiff suffered damage, and the extent thereof. "Substantial factor" was defined as the moving or producing cause. The jury was cautioned to use its own "good common sense and guarded judgment" and "to arrive at the very truth of the matter without sympathy, bias, passion or prejudice." *See Giltner v. Stark*, 219 N.W.2d 700, 704 (Iowa 1974); *Allen v. Lindeman*, 164 N.W.2d 346, 348–50 (Iowa 1969); *Castner v. Wright*, 256 Iowa 638, 643, 127 N.W.2d 583, 586 (1964).

The majority holds that jurors who were carefully selected to be impartial and disinterested nevertheless were incapable of following and applying the above instructions. This amazing and unsubstantiated conclusion rejects everything this court ever has written on the function and insight of a jury. *See, e. g., Barnhill v. Davis*, 300 N.W.2d 104, 106 (Iowa 1981) ("The responsibility of weeding out fraudulent claims on a case-by-case basis rests on courts, juries and the adversary system."); *Shook v. Crabb*, 281 N.W.2d 616, 620 (Iowa 1979) ("We do an injustice not only to the intelligence of jurors, but to the efficacy of the adversary system, when we express undue concern over the quantum of collusive or meritless law suits."); *State v. Reese*, 272 N.W.2d 863, 869–70 (Iowa 1978) (McCormick, J., dissenting) ("Our system depends on society's trust in juries, and history proves this trust is justified. *See Bearbower v. Merry*, 266 N.W.2d 128, 134 (Iowa 1978).").

The majority excuses the jury's perceived collapse when confronted by these issues on the ground the theory of recovery is "flawed" because it is rooted in property rights. But *Bearbower* made it clear that in Iowa the cause of action is not based on property rights, but on the protection of conjugal rights and the spouses' reasonable expectations surrounding the marital relationship. *See Bearbower*, 266 N.W.2d at 130, 133. "[T]he law of torts is concerned not only with the protection of interests of personality and of property, tangible or intangible, but also with what may be called '*relational*' interests . . . . An interference with the continuance of the relation, unimpaired, may be redressed by a tort action, and of this the relations of the family are a conspicuous example." W. Prosser, *The Law of Torts* § 124, at 873 (4th ed. 1971) (emphasis supplied).[1]

---

1. *See Restatement (Second) of Torts* § 683 (1977):

> One who purposely alienates one spouse's affections from the other spouse is subject to liability for the harm thus caused to any of the other spouse's legally protected marital interests.

and comment "c" ("legally protected marital interests"), together with comment "g":

> One does not become liable for alienation of affections, without any initiative or encouragement, merely by becoming the object of the affections that are transferred from a spouse. It is only when there is such active participation, initiative or encouragement on the part of the defendant that he or she has in fact played a substantial part in inducing or causing one spouse's loss of the other spouse's affections, that liability arises.

The gravamen of the alienation of affections action is loss of consortium. See *Acuff v. Schmit*, 248 Iowa 272, 276, 78 N.W.2d 480, 483 (1956); *Pyle v. Waechter*, 202 Iowa 695, 701, 210 N.W. 926, 929 (1926). Consortium is conjugal fellowship of wife and husband, and the right of each to the company, cooperation, affection and aid of the other in every conjugal relation. *Lampe v. Lagomarcino-Grupe Company*, 251 Iowa 204, 206, 100 N.W.2d 1, 2 (1959). We routinely have recognized a jury's ability to measure its value where the loss was caused negligently. *Id.*; see *Jansen v. Harmon*, 164 N.W.2d 323, 324 (Iowa 1969). Compare I.S.B.A. Uniform Jury Instructions (Civil), instruction 3.17 (Damages—Consortium) with instruction 27.8 (Alienation of Affections—Actual or Compensatory Damages).

The difficulty of translating damage to intangible rights into money judgments has deterred us not at all in other law areas. We recognize violation of the intangible right of privacy as an actionable tort. *Bremmer v. Journal-Tribune Publishing Company*, 247 Iowa 817, 821–822, 76 N.W.2d 762, 765 (1956). We permit actual damages to be awarded for the intentional infliction of emotional harm. See *Hall v. Montgomery Ward & Co.*, 252 N.W.2d 421, 423 (Iowa 1977); *Barnett v. Collection Service Co.*, 214 Iowa 1303, 1312, 242 N.W. 25, 28 (1932). We have held a plaintiff could sue for damages for emotional distress arising from breach of a funeral service contract. *Meyer v. Nottger*, 241 N.W.2d 911, 921 (Iowa 1976). We early allowed money compensation for mental pain as a component of damages for a physical impact tort. *Collins v. The City of Council Bluffs*, 35 Iowa 432, 436 (1872). In *Wardlow v. City of Keokuk*, 190 N.W.2d 439, 448 (Iowa 1971), we held a wrongful death case jury could assign a dollar value to the loss of companionship and society of a minor child. *Bearbower*, 266 N.W.2d at 133.

Even if marriage is viewed merely as a "civil contract" pursuant to section 595.1, The Code 1979, the majority opinion is a departure from our modern recognition of the tort of wrongful interference with contractual relations. See *Charles Gabus Ford, Inc. v. Iowa State Highway Commission*, 224 N.W.2d 639, 646 (Iowa 1974) and citations.

The majority cites no definitive studies and no objective research to support its opinion. The assertion the result is mandated by "human experience" is a mere distillation of individual subjective reactions. We should honor the jury's verdict, which was constrained, controlled, and molded by instructions based on law.

II. The majority opinion leaves the impression that much has happened nationally in this area since *Bearbower*. A careful comparison of the statutory and case history set out in its decision with that set out in *Bearbower* will show very little has changed. The *Bearbower* majority opinion, 266 N.W.2d at 132, discussed the Washington Court of Appeals decision abolishing the alienation cause of action. *Wyman v. Wallace*, 15 Wash.App. 395, 549 P.2d 71 (1976). Since then the Washington Supreme Court, in a five-to-four decision, has affirmed. *Wyman v. Wallace*, 94 Wash.2d 99, 615 P.2d 452 (1980). The Rhode Island statute referred to merely imposes a one-year statute of limitations for such actions, and was last amended in 1976, two years before *Bearbower*. See R.I. Gen. Laws § 9–1–14 (Bobbs-Merrill Supp. 1980).

The majority opinion highlights eighteen states in which alienation actions have been abolished by statute, one state that has abolished the cause of action by judicial pronouncement, and one state in which the cause of action never has existed. However, it follows that in nearly two-thirds of the nation's jurisdictions the cause of action remains viable. This statistic remains virtually unchanged since *Bearbower*. See 266 N.W.2d at 131 (noting the tort had been abolished "in approximately one-third of the states").

Iowa thus has the questionable distinction of being the second supreme court in the nation to deny access to the courts in these

cases, relegating the parties to the street to settle their differences. This result doubtlessly will be hailed by those who believe extramarital conduct should be accorded a constitutional right of privacy,[2] and those who support the increasing amoralization of public policy. *Cf.* Comment, 22 Vill.L.Rev. 1253, 1264 (1977). However, the majority's rationale, with its unreasoned emphasis on the perceived incapacity of the jury and its erroneous characterization of the marital interest as a "property" interest, has not convinced me *Bearbower* should be overruled. I would retain the action for its deterrent effect and for the reasons expressed in *Bearbower.*

LeGRAND, McGIVERIN, and SCHULTZ, JJ., join in this dissent.

---

2.  *See* Note, 56 N.D.L.Rev. 239, 255 (1980).