## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-CA-00970-SCT

*ALVIN E. BLAND*

*v.*

*CHARLES W. HILL*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/04/1997 |
| TRIAL JUDGE: | HON. BARRY W. FORD |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JANET MCMURTRAY |
| | FRED KRUTZ, III |
| | JAMES HUGH RAY |
| | MICHAEL D. SIMMONS |
| ATTORNEYS FOR APPELLEE: | MICHAEL J. MALOUF |
| | CHARLES ERIC MALOUF |
| | MICHAEL JAMES MALOUF, JR. |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED IN PART, REVERSED IN PART AND REMANDED ON DIRECT APPEAL. AFFIRMED ON CROSS-APPEAL - 4/22/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/13/99 |

**EN BANC.**

**PITTMAN, PRESIDING JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. This appeal arises out of a complaint filed by Charles W. Hill ("Buddy") against Alvin E. Bland for the loss of the affections of Buddy's wife, Judy, and for negligent and intentional infliction of emotional distress. This matter was tried before a jury which found in favor of Buddy and awarded him $200,000 in damages.

Bland timely filed his notice of appeal and now asks this Court, among other things, to abolish the common law tort of alienation of affections. Buddy has filed a cross-appeal. The following issues are presented for this Court's consideration and review:

## ISSUES ON DIRECT APPEAL

**I. WHETHER MISSISSIPPI SHOULD ABOLISH THE TORT OF ALIENATION OF AFFECTIONS.**

**II. WHETHER IT WAS REVERSIBLE ERROR FOR THE TRIAL COURT TO EXCLUDE ALL EVIDENCE RELATING TO BUDDY HILL'S ADULTEROUS AFFAIR WITH ANOTHER WOMAN AND THE EFFECT THE AFFAIR HAD ON JUDY'S AFFECTION FOR AND TRUST IN BUDDY HILL.**

**III. WHETHER THE TRIAL COURT ERRED IN FAILING TO DIRECT A VERDICT FOR BO BLAND ON THE CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.**

**IV. WHETHER THE TRIAL COURT ERRED IN FAILING TO DIRECT A VERDICT FOR BLAND ON THE CLAIM OF NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS.**

**V. WHETHER THE TRIAL COURT ERRED IN DENYING BLAND'S MOTION FOR SUMMARY JUDGMENT AND SUBMITTING THE ALIENATION OF AFFECTIONS CLAIM TO THE JURY.**

**VI. WHETHER THE DAMAGES AWARDED WERE EXCESSIVE.**

## ISSUES ON CROSS APPEAL

**I. WHETHER THE TRIAL COURT ERRED IN EXCLUDING ALL EVIDENCE RELATING TO BLAND'S ADULTEROUS AFFAIR WITH JUDY.**

**II. WHETHER THE TRIAL COURT ERRED IN REFUSING TO SUBMIT PUNITIVE DAMAGES TO THE JURY.**

## STATEMENT OF THE FACTS

¶2. Buddy Hill married Judy Mills on December 31, 1959. Buddy and Judy had two children and lived in Nettleton, Mississippi, where they attended the Pentecostal Church. According to Judy's deposition testimony, on December 30, 1984, Buddy confessed to Judy that he was having an adulterous affair. Several days later, Buddy also confessed that his lover was pregnant and that he could be the father. Buddy told Judy that if he was in fact the father, he did not know if he would stay married to Judy. At trial, Buddy moved in limine to have any mention of his adulterous affair excluded from evidence. This motion in limine was granted.

¶3. The trial court allowed Bland to make an offer of proof as to what Judy would have testified to concerning Buddy's affair. Depositions of the parties and witnesses were also incorporated into the record as part of the offer of proof. Counsel for Bland proffered that Judy would have testified that Buddy's affair destroyed any love, trust and affection that she had for Buddy. Judy would also have testified that she never

regained her trust, love, and affection for Buddy and that the affair was the cause of the break up of her marriage.

¶4. Buddy was a self-employed painting contractor by trade. Buddy began doing various jobs for Bland in 1984 and had worked for Bland every year thereafter. In the early 1990s, Buddy was working at Bland's home hanging wallpaper. Bland was married at the time to Lou. Lou had lost her housekeeper and asked Buddy if he might know anyone who would be interested in some part-time work. Judy expressed an interest in the job, and eventually took it. Judy worked primarily for Lou and, over time, she and Lou became good friends. In April, 1993, Lou died, leaving Bland devastated.

¶5. Judy continued to work for Bland after Lou's death. In 1994, Judy and Bland became friends. At trial, Judy testified that she told Bland that she was not happy in her marriage and that she did not love Buddy. Over the next several months, Judy developed feelings for Bland. Judy testified that Bland did not cause her to lose her feelings for Buddy.

¶6. Judy testified that she sought the advice of her brother-in-law, Coy Hill, a Pentecostal minister. She also spoke with her sister about her unhappiness in her marriage. Judy told Coy and her sister that Buddy had "killed" the love she had for him, and she wanted to leave him.

¶7. In the fall of 1994, Bland, Judy, Buddy, and an employee of Bland's took a trip on Bland's boat up the Tennessee River to see the fall foliage. Sometime after the trip, Judy brought home a videotape of the trip. There was also footage at the end of the tape which showed Judy being followed around Bland's house. Buddy perceived this footage as flirtatious and had the tape admitted at trial.

¶8. Around the middle of December, 1994, Judy told Buddy that she wanted to move out of their home because she needed "some space". A week or so later, Judy told Buddy that she was in love with Bland and wanted a divorce.

¶9. On or about December 16, 1994, Buddy and Judy went to talk to Bland. Bland told Buddy that he had been depressed after Lou's death and that Judy had cheered him. Eventually, they had fallen in love. Buddy told Bland that he still loved Judy, and he asked Bland not to interfere. Bland told Buddy that he would respect Judy's desires.

¶10. Buddy testified that after the confrontation with Bland, Judy agreed to try and work things out. In February or March, 1995, Judy told Bland that she was definitely going to leave Buddy. In preparation for leaving, Judy opened a separate bank account, and placed in it $1000. Subsequently, Bland gave Judy $10,000. In March, 1995, Bland purchased a condominium. Judy told Buddy on April 23, 1995 that she was moving out the following day. On April 24, 1995, Judy moved into the condominium.

¶11. In June, 1995, Judy and Buddy filed for divorce on the grounds of irreconcilable differences. The divorce was final on September 13, 1995. Judy married Bland in December, 1995. Buddy described the loss of Judy as "devastating". As a result of losing Judy, Buddy became depressed and went to see a psychologist. Buddy also testified that he lost 25-30 pounds after Judy left.

¶12. On May 30, 1997, the jury returned a verdict for Buddy in the amount of $200,000. Bland filed a motion for JNOV, or alternatively, for a new trial, or a remittitur on June 13, 1997. The motion was denied on July 17, 1997. From the denial of his motion, Bland perfected his appeal to this Court.

## DISCUSSION OF LAW-DIRECT APPEAL

**I. WHETHER MISSISSIPPI SHOULD ABOLISH THE TORT OF ALIENATION OF AFFECTIONS?**

¶13. The primary issue raised by Bland on appeal is that this Court should abolish the tort of alienation of affections. This Court has said "[t]he purpose of a cause of action for alienation of affection is the 'protection of the love, society, companionship, and comfort that form the foundation of a marriage...'" *Saunders v. Alford,* 607 So.2d 1214, 1215 (Miss., 1992)(quoting *Norton v. McFarlane,* 818 P.2d 8, 12 (Utah 1991). To prove an alienation of affections claim, the plaintiff must show: (1) wrongful conduct of the defendant; (2) loss of affection or consortium; and (3) causal connection between such conduct and loss. *Saunders,* 607 So. 2d at 1215. (citations omitted). A claim for alienation of affections does not require that the plaintiff prove an adulterous relationship, although a claim for criminal conversation does require such proof. *Id.* at 1215-16.

¶14. In *Saunders,* this Court abolished the tort of criminal conversation because it had "outlived its usefulness". *Id.* at 1219. The Court did not address the issue of the abolition of alienation of affections and said that:

> We are not here concerned with the tort of alienation of affections. That cause was decided adversely to the plaintiff and he does not challenge that disposition by cross appeal. Our task is but to consider the extent to which it is advisable to judicially abolish the tort of criminal conversation and whether we have the authority to do so.

¶15. On the same day that *Saunders* was decided, this Court upheld a jury verdict of $50,000 on an alienation of affections claim in *Kirk v. Koch,* 607 So.2d 1220 (Miss., 1992). However, as in *Saunders*, whether Mississippi should abolish alienation of affections was not raised as an issue.

¶16. It is significant that in both *Saunders* and *Kirk*, this Court refused to extend its abolition of "heart balm" torts to include the tort of alienation of affections. As noted above, we said in *Saunders* that the important purpose of the tort of alienation of affections is to protect the underlying foundation of marriage: love, society, companionship and comfort.

¶17. This Court has stated that:

> . . . where a husband is wrongfully deprived of his rights to the 'services and companionship and consortium of his wife,' he has a cause of action 'against the one who has interfered with his domestic relations.' . . . The husband might then sue for . . . alienation of affection . . ..

*Camp v. Roberts*, 462 So.2d 726, 727 (Miss., 1985). This Court has further held that in dealing with loss of consortium of a spouse:

> The interest sought to be protected is personal to the wife [husband] and arises out of the marriage relation. She [He] is entitled to society, companionship, love, affection, aid, services, support, sexual relations and the comfort of her husband [his wife] as special rights and duties growing out of the marriage covenant. To these may be added the right to live together in the same house, to eat at the same table, and to participate together in the activities, duties and responsibilities necessary to make a home. All of these are included in the broad term, "conjugal rights." The loss of consortium is the loss

of any or all of these rights. . . .

*Kirk v. Koch*, 607 So. 2d 1220, 1224 (Miss. 1992) (citing *Tribble v. Gregory*, 288 So.2d 13, 16 (Miss., 1974)). We believe that the marital relationship is an important element in the foundation of our society. To abolish the tort of alienation of affections would, in essence, send the message that we are devaluing the marriage relationship. We decline the invitation to abolish the tort of alienation of affections.

## II. WHETHER IT WAS REVERSIBLE ERROR FOR THE TRIAL COURT TO EXCLUDE ALL EVIDENCE RELATING TO BUDDY HILL'S ADULTEROUS AFFAIR WITH ANOTHER WOMAN AND THE EFFECT THE AFFAIR HAD ON JUDY'S AFFECTION FOR AND TRUST IN BUDDY HILL.

¶18. Prior to trial, the trial court ruled that no evidence of Buddy's affair with another woman would be allowed at trial. The trial judge ruled that:

Also - there will be no mention of it, and there will also be no mention of prior adultery by the plaintiff in this case. The Court is of the opinion that that adultery was more than 10 years [ago]. And in addition, there was a condonation. They reconciled and went back together, and I'm not going to allow that, so it won't - both sides instruct your witnesses. I don't want any mention of that. We are going to try this case based upon the alienation and what's alleged in the complaint and nothing else.

¶19. Bland now argues that the court's ruling was in error because the evidence was relevant, and its probative value was not substantially outweighed by its prejudicial effect. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Miss. r. evid. 401. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Miss. r. evid. 403. "The definition is a broad one, favoring admissibility." *Foster v. State,* 508 So.2d 1111, 1117 (Miss., 1987). The trial court, however, is afforded broad discretion in determining the admissibility of evidence. *Foster,* 508 So. 2d at 1117.

¶20. The elements of an alienation of affections cause of action are: (1) wrongful conduct of the defendant; (2) loss of affection or consortium; and (3) causal connection between such conduct and the loss. *Kirk v. Koch,* 607 So. 2d 1220, 1222 (Miss. 1992). Bland asserts that the essence of this test is whether the marriage at issue was damaged by some wrongful conduct of the defendant or by prior conduct between the husband and wife. He argues that evidence of Buddy's affair was relevant as to causation because it was relevant to Judy's feelings toward Buddy and her marriage and to the depth of Buddy's love for and commitment to Judy. Essentially, Bland is arguing that this evidence was relevant to show that Buddy, not Bland, alienated Judy's affections. Bland also argues that evidence of Buddy's affair was relevant to damages because this evidence was more probative than any other evidence on the issue of the value that Buddy placed on his marriage.

¶21. Buddy argues that the evidence was properly excluded because the affair was remote in time, and even after Judy was told of the affair, she did not leave Buddy. Buddy argues that Judy condoned Buddy's conduct. The trial court also relied on this condonation argument.

¶22. Whether Judy condoned Buddy's affair is irrelevant. This was not a divorce action on the grounds of adultery where condonation would be a defense. The issue is not whether Judy condoned Buddy's affair, but whether Buddy's affair was still having an effect on the condition of the marriage.

¶23. The evidence of Buddy's affair should not have been excluded at trial. It was clearly relevant on the issue of causation. Furthermore, it cannot be said that its relevancy was "substantially outweighed by the danger of unfair prejudice." Miss. r. evid. 403. The primary issue in this case was whether Bland wrongfully interfered with the marriage and caused Judy's loss of affection. As it stood, Buddy was allowed to portray his marriage as perfect until Bland entered the picture. This jury was not given the whole story. By excluding this evidence, the trial court abused its discretion. Thus, on this issue, we reverse and remand for a new trial.

## III. WHETHER THE TRIAL COURT ERRED IN FAILING TO DIRECT A VERDICT FOR BLAND ON THE CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

## IV. WHETHER THE TRIAL COURT ERRED IN FAILING TO DIRECT A VERDICT FOR BLAND ON THE CLAIM OF NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS.

¶24. Because we reverse the trial court on Issue II and remand for a new trial, it is not necessary for this Court to address Issues III and IV.

## V. WHETHER THE TRIAL COURT ERRED IN DENYING BLAND'S MOTION FOR SUMMARY JUDGMENT AND SUBMITTING THE ALIENATION OF AFFECTIONS CLAIM TO THE JURY.

¶25. Bland argues that Buddy did not prove the elements of alienation of affections. Specifically, Bland argues that Buddy did not prove Bland committed any wrongful conduct or that the conduct caused Judy to leave Buddy. Bland relies on the fact that Judy testified that she was unhappy in her marriage before falling in love with Bland.

¶26. Buddy counters that Judy's testimony did not entitle Bland to summary judgment. Her credibility was to be judged, just as all the other witnesses, by the jury. Buddy's position is well taken. There was much conflicting testimony in this case such that the claim for alienation of affections was properly submitted to the jury.

## VI. WHETHER THE DAMAGES AWARDED WERE EXCESSIVE.

¶27. Because we reverse the trial court on Issue II and remand for a new trial, it is not necessary for this Court to address Issue VI.

## DISCUSSION OF LAW-CROSS APPEAL

## I. WHETHER THE TRIAL COURT ERRED IN EXCLUDING ALL EVIDENCE RELATING TO BLAND'S ADULTEROUS AFFAIR WITH JUDY.

¶28. The trial court excluded all evidence relating to an adulterous affair between Bland and Judy. The trial court ruled that:

> In making that ruling, there was nothing in the complaint that was alleged about adultery in the complaint that you filed in this action. There was nothing in the divorce about the complaint - the

divorce was on the grounds of irreconcilable differences. Looking at the complaint that you filed and the divorce on the basis of that, this Court ruled that adultery was not an issue and was not going to let that come in.

¶29. Buddy contends that the trial court erred and that he was not required to allege adultery in his complaint for punitive damages. He argues that he provided notice of the damages sought and that adultery was not a separate cause of action required to be pled in the complaint.

¶30. Bland argues that he had no notice that evidence of adultery would be offered until twenty days after the discovery deadline. He argues that adultery was not pled in the complaint and was never mentioned in discovery. Judy and Bland both denied any sexual relationship prior to their marriage. Bland also argues that Buddy made no proffer as to any direct proof of adultery and, therefore, should be procedurally barred.

¶31. It is clear that the reason Buddy wanted to put on proof of adultery is to obtain a punitive damage instruction. This Court has held that in cases of adultery malice is presumed. *Walter v. Wilson,* 228 So.2d 597, 598 (Miss., 1969). Buddy cites to *Walter*, but in *Walter* the plaintiff was suing for alienation of affections **and** criminal conversation. Criminal conversation, when it was a viable claim, required proof of a sexual relationship between the alienated spouse and the defendant. In the case *sub judice,* Buddy was suing only for alienation of affections. Bland was not on notice that he would have to defend against accusations of adultery until after the discovery deadline. Buddy did not proffer any direct evidence, and this Court procedurally bars this claim.

## II. WHETHER THE TRIAL COURT ERRED IN REFUSING TO SUBMIT PUNITIVE DAMAGES TO THE JURY.

¶32. Miss. Code Ann. § 11-1-65 (1991) provides, in part that:

Punitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud.

¶33. This Court stated in *Walter, supra,* that:

The modern trend of authority in the case of alienation of affection is that before the trial judge warranted and submitted to the jury the question of punitive damages on account of alienation of affections, as distinguished from criminal conversation, the testimony must show that the acts of the defendant in alienating the affection of the spouse were done with malice or that there were circumstances or aggravation. . . .

*Walter,* 228 So. 2d at 598.

¶34. This is not a case warranting punitive damages. Because the trial court made the correct ruling with regard to the evidence of adultery between Bland and Judy, punitive damages would not have been proper. There was simply no proof that Bland acted with actual malice. Therefore, this issue is without merit.

## CONCLUSION

¶35. This Court declines the invitation to abolish the tort of alienation of affections. Because the trial court abused its discretion in excluding proof of Charles W. (Buddy) Hill's alleged adulterous affair with another woman, we reverse the judgment below and remand for a new trial.

¶36. **AFFIRMED IN PART, REVERSED IN PART AND REMANDED ON DIRECT APPEAL. AFFIRMED ON CROSS-APPEAL.**

**PRATHER, C.J., SULLIVAN, P.J., BANKS, SMITH, WALLER AND COBB, JJ., CONCUR. SMITH, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY BANKS, J., WALLER, J., JOINS IN PART. McRAE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION. MILLS, J., NOT PARTICIPATING.**

### SMITH, JUSTICE, SPECIALLY CONCURRING:

¶37. I agree with majority opinion in declining to abolish the tort of alienation of affection because it would "send the message that we are devaluing the marriage relationship." Maj. Op. at 7. I write further to express my view.

¶38. The dissent would have this Court abolish the common law tort of alienation of affection retroactively because the national trend is toward abolition of the alienation of affection cause of action. The dissent also finds that alienation claims are outdated because they seek to compensate a spouse for the loss of love. I specially concur to stress the egregious facts here which support the majority's view not to abolish this tort.

¶39. While I agree with the dissent that the ancient view of considering a wife as the property of her husband is indeed archaic, recent times have seen the tort of alienation of affection made applicable to women and rightfully so. *See Kirk v. Koch*, 607 So.2d 1220 (Miss. 1992). Public policy as well as the federal and Mississippi Constitutions require such a view. In *Kirk*, where a woman sought damages, this Court held, as follows:

> The interest sought to be protected is personal to the wife and arises out of the marriage relation. She is entitled to society, companionship, love, affection, aid, services, support, sexual relations and the comfort of her husband as special rights and duties growing out of the marriage covenant. To these may be added the right to live together in the same house, to eat at the same table, and to participate together in the activities, duties and responsibilities necessary to make a home. All of these are included in the broad term, "conjugal rights." **The loss of consortium is the loss of any or all of these rights.**

*Kirk*, 607 So.2d at 1224 (*quoting Tribble v. Gregory*, 288 So. 2d 13, 16 (Miss. 1974)) (emphasis added). Now that the sexes have at least for these purposes been equaled, it is quite ironic for the dissent to state that the tort is based on archaic notions of the wife as property of the husband. To the contrary, there is no point in abolishing an otherwise valid common law tort, especially now that we have leveled the

playing field in *Kirk*. Would the dissent strike down **consortium** next?

¶40. In certain cases, such as the one currently at bar, where the proof is so great in support of an action for alienation of affections, we must ask the following questions. Should an individual be allowed to intrude upon a marriage to such an extent as to cause it to come to an end? Does a spouse have a valuable interest in a marriage that is worthy of protection from the intruding third party? In my view, the answer to both questions is in the affirmative. The traditional family is under such attack both locally and nationally these days that this Court should not retreat now from the sound view of the tort of alienation of affections espoused by this Court in *Saunders* as entitling a spouse to "protection of the love, society, companionship, and comfort that form the foundation of a marriage." *Saunders v. Alford*, 607 So. 2d 1214, 1215 (Miss. 1992) (*quoting **Norton v. McFarlane***, 818 P.2d 8, 12 (Utah 1991)); *see also **Horner v. Byrnett***, 511 S.E.2d 342 (N.C. Ct. App.1999). I do not believe that under the compelling facts of this particular case this Court should hold that the doctrine of alienation of affections has outlived its usefulness as a deterrent protecting the martial relationship of a husband and wife in cases where the facts clearly warrant. *Id.* at 1219.

¶41. The dissent states that this tort serves no legitimate purpose whatsoever in modern society, but rather, has simply been extended past its time. This is somewhat akin to the view that "everybody else is doing it, so should I." While I agree that it appears society's moral values have changed during modern times, I do not believe Mississippi should get aboard this runaway train. I would also not take away an offended spouse's only legal means to seek redress in our courts for the wrongful conduct of a third party who wilfully and intentionally interferes in and aids in destroying a marriage.

¶42. The dissent has referred to this Court's abolition of the tort of criminal conversation as a basis for doing likewise here. However, the *Saunders* Court stated that "**the tort of criminal conversation is unnecessary as long as a cause of action for alienation of affection is available.**"*Id.* at 1217 (citing *Norton*, 818 P.2d at 17) (emphasis added). The Court also noted that the tort of alienation of affection "**is better suited as a deterrent protecting the marital relation**."*Id.* at 1218 (emphasis added); *see also **Thomas v. Siddiqui***, 869 S.W.2d 740, 742 (Mo. 1994)(Missouri Supreme Court abolished the tort of criminal conversation, but specifically noted that the tort of alienation of affection remained viable). The *Saunders* Court thus continued to recognize the viability of the tort of alienation of affection.

¶43. The ultimate question here is whether either offended spouse to a marriage, if she or he can prove the required elements, is entitled to damages from a third party who used improper or wrongful means to interfere with their marriage, ultimately causing the demise of that marriage? The answer has to be "Yes!" This is the only legal remedy available. "The cause of action for alienation of affections provides a remedy when a third person is at fault for the destruction of a marital relation." *Jackson v. Righter*, 891 P.2d 1387, 1393 (Utah 1995). "When a third person is at fault for the breakdown of a marriage, the law ought to provide a remedy." *Norton,* 818 P.2d at 12. The tort compensates a spouse who has suffered loss and injury to his or her martial relationship through the intentional interference of a third party. *Nelson v. Jacobsen*, 669 P.2d 1207, 1216 (Utah 1983).

¶44. Here, Hill offered overwhelmingly sufficient facts to warrant the jury verdict of $200,000. Hill had worked for Bland every year since 1984 and considered him a very dear friend. Hill was the primary source of his family's income, until Judy obtained employment with Bland after the Blands' housekeeper left in 1992. Mrs. Bland died in April 1993. The Hills had only as recently as 1991 completed construction of

their dream home. They attended church twice on Sundays and on Wednesday night. They frequently entertained guests and friends. Their friends, the Shackelfords, with whom they visited at least three times a week, testified that "they acted like a happy couple, didn't seem like anything was wrong with their marriage." Judy Hill never confided to any close friends that she was unhappy in her marriage.

¶45. Hill saw some video footage taken on a Tennessee River trip on Bland's yacht in October 1994, which had a scene taken by Bland at Bland's home while he followed Judy around flirting with her. While on that trip, Hill went ashore with Woody Majors, who worked for Bland. Upon their return Hill inquired of Judy's whereabouts, and Bland stated that she was "taking a bath in my bathroom." Needless to say, Hill became suspicious of these actions and events.

¶46. In December 1994, Judy told Hill that she wanted to move out because "Well, I just need some space. I need some time to think." Hill convinced her to remain in their home and sleep in another bedroom. Shortly thereafter she told Hill, "Bo and I are in love and we want to get married." Bland had already told his children of their plans to get married.

¶47. Hill and Judy sought counseling from her sister Marge Hill and her husband Coy, a minister, who convinced the couple to work things out. The record reflects that Judy moved back into the martial bedroom, and sexual relations resumed between the couple as it had been for many years.

¶48. The Hills even confronted Bland on December 16, 1994. Hill asked Bland to back off the situation and stated, "She's my wife. I feel like I have a right to try to influence her." Bland simply stated that they had fallen in love and that "I'll honor what Judy asks." Bland even testified that Hill told him, "I have the right to try to rebuild my marriage." Bland did not honor Hill's request. Regardless, according to Hill, Judy agreed to work things out and recommitted to her marriage. However, the very next day, Hill found a letter from Bland to Judy which stated *inter alia*, "I will not forget about you as you told me to. . . I know we can have a good life together. . .You are my shining star, and I am not going to lose you."

¶49. The Hills continued living as husband and wife even to the point of engaging in sexual relations on April 22 prior to her moving out of their home on April 24th. Bland promised and delivered a five-carat diamond ring to Judy. Bland showered Judy with vast amounts of gifts. In November 1994, Judy gave Hill $1,100 in cash with no explanation as to its origin. In March, 1995, while shopping, Judy produced $400 cash and stated Bland had given it to her. Also in March, Bland bought a condominium for Judy. In December 1995, Bland gave Judy $1,000 with which to open an account solely in her name. Also, on December 29, 1995, Bland put an additional $10,000 in that account for Judy. Judy used money given to her by Bland to pay her attorneys for her divorce from Hill.

¶50. Although Judy received practically nothing of value from the Hill's divorce, within a month of their divorce she had personal property worth $80,000. As of three months after her marriage to Bland, her bank account had a balance of $40,000. Judy and Bland made trips to the Holy Land, Hawaii, San Francisco, Florida, and the Bahamas during their first year of marriage. Judy now lives in a house with some ten thousand square feet and has a maid. These facts, which were obviously believed by the jury, over testimony offered by Bland and Judy, were more than adequate to support the verdict. The trial judge did not allow punitive damages to go to the jury. Therefore, these egregious facts support the majority's opinion that alienation claims are not outdated.

¶51. Although the majority did not address Issues III and IV, I also note my view on these issues as I

believe they will surface again on re-trial. Regarding Hill's mental anguish, he testified that he suffered depression, sought the help of a psychologist, Dr. Joe Arnold, and was affected physically to the point that he lost 25-30 pounds. Hill left his church where he had attended with Judy some forty years primarily because of embarrassment. His income dropped drastically from a high of $40,000 to around $12,000 to $14,000 in 1995.

¶52. This Court has stated *inter alia*, "if there is a resulting physical illness or assault upon the mind, personality or nervous system of the plaintiff which is medically cognizable and which requires or necessitates treatment by the medical profession, this Court has followed the modern tendency and held a legal cause of action exists." ***Sears Roebuck & Co. v. Devers***, 405 So. 2d 898, 902 (Miss. 1981). *See also **Leaf River Forest Prods, Inc. v. Ferguson***, 662 So. 2d 648, 658 (Miss. 1995). However, in these two cases, no proof was offered to support mental anguish; whereas in the case at bar, the proof is clearly sufficient.

¶53. In ***Ferguson***, this Court stated, as follows:

> Appellants question the sufficiency of the evidence supporting the verdict in support of the appellees: The applicable standard of review may be found in ***Munford, Inc. v. Fleming***, 597 So. 2d 1282, 1284 (Miss. 1992), which states that this Court should

> consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inference that may be reasonably drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, [we are] required to reverse and render. **On the other hand if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached a different conclusion, affirmance is required**.

*Ferguson*, 662 So. 2d at 658 (emphasis added).

¶54. This Court has held that "[m]ental anguish is a nebulous concept. . .and requires substantial proof for recovery." *Mississippi Valley Gas Co. v. Estate of Walker*, 725 So. 2d 139, 148 (Miss. 1998) (*quoting **Morrison v. Means** 680 So. 2d 803, 805 (Miss. 1996)). In ***Morrison***, there was absolutely no evidence to support emotional or mental anguish. ***Morrison*** at 805. In ***Ferguson,*** the Court further held, that "the standard is whether defendant's behavior is malicious, intentional, willful, wanton, grossly careless, indifferent or reckless" ***Ferguson*** at 659.

¶55. Concerning the issue of Bland's intentional infliction of emotional distress, here there can be no question but that Bland's actions were "intentional and willful", evincing an attitude of indifference toward Hill's attempts at putting his marriage to Judy back together. Bland clearly told Hill on several occasions that he would only respect Judy's desires rather than Hill. Even when the proof demonstrated that Hill and Judy had restored their marriage, as shown by the letter aforementioned herein, Bland refused to agree to Judy's decision to continue in her marriage with Hill and continued to interfere in their marriage. Bland should have easily and reasonably foreseen that his harmful action would have caused the Hills to divorce. He had already told his children that he planned to marry Judy even before Judy told Hill that she was leaving him to marry Bland.

¶56. In *Estate of Walker*, cited *supra*, a case of simple negligence, this Court found that the testimony of many of the plaintiffs alleging mental anguish was clearly insufficient. *Estate of Walker*, 725 So. 2d at149-51. However, three of the plaintiffs offered sufficient testimony to support their claims, as follows:

> However, Plaintiff Earthlena Davis who testified she was scared of the fire and had to be taken to the hospital following the fire because of an already existing bad heart and nerves. Plaintiff Henrietta Billingsley, . . . testified in her deposition that she went to her doctor after the fire because "it made [her] real nervous" and she "couldn't sleep at all. . .I could see that blaze all through the night." Her doctor gave her a prescription for her nerves. Finally, Plaintiff Nora Corder had to be taken to the hospital for smoke inhalation as a result of the fire. Corder also testified that it was a terrible feeling to watch her house burning.

*Id.* at 150. This Court admittedly noted that the three plaintiffs "may have suffered some sort of bodily or physical injury as a result of the fire." *Id.* at 150-51. However, the proof here is much more detailed and convincing than the proof in *Estate of Walker* and is thus more than sufficient.

¶57. More importantly, there is a clear distinction in that the proof is overwhelming that Bland's conduct was more than the usual simple "garden variety" negligent conduct by a defendant. Rather, his conduct was clearly willful, intentional and indifferent showing the sort of demonstrative harm reasonably foreseeable to the defendant. *Strickland v. Rossini*, 589 So.2d 1268, 1275 (Miss. 1991) (holding a plaintiff may recover for emotional injury proximately resulting from negligent conduct, provided only that the injury was reasonably foreseeable by the defendant). Therefore, Hill did not have to show an actual physical injury to remove this allegations of mental anguish from the everyday garden variety conduct referred to in *Morrison*.

¶58. Accordingly, I specially concur.

**BANKS, J., JOINS THIS OPINION. WALLER, J., JOINS THIS OPINION IN PART.**

**McRAE, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶59. Over the years, courts have increasingly been required to delve into matters which are not ideally suited for judicial intervention. Not the least of these are matters pertaining to the family. Unlike Solomon, we cannot order children cut into two[1] but over and over again we are asked to favor one parent over another in deciding in whose custody lies the best interests of the child. Judges cannot help but be loathe to make these decisions. When families are forced by circumstance to request the assistance of the judicial system, no party can come out a winner. As it applies to two spouses, the judicial system cannot be called upon to make one spouse love another. When a marriage breaks down, it is usually the fault of both spouses.

¶60. Hence, this Court is called upon under an archaic cause of action to put a price tag on the heart (love) by analyzing the love between two spouses over the marriage together with a third party and that party's role in allegedly breaking up the marriage that for all practical purposes was already headed for a divorce court. Accordingly, it is time for this Court to review and abolish the cause of action known as alienation of affections.

¶61. No family dispute can be less appropriate for resolution by judges and juries than those involving matters of the heart. Here we have been given an opportunity to join the overwhelming number of states that have abolished the lawsuit for alienation of affections and yet, against every reason for doing so, we refuse to do so at this time. Forty-two states no longer allow for the cause of action known as alienation of affection. While I concur that the majority is doing the right thing vis-a-vis the evidentiary ruling, I dissent inasmuch as I believe this opportunity should be taken to abrogate once and for all the tort known as alienation of affections.

¶62. Alienation actions originated in the notion of wives as chattel. *Saunders v. Alford*, 607 So.2d 1214, 1215 (Miss. 1992). If a third party's interference caused the alienation of the wife's affection, a trespass to the husband's chattel occurred and damages would lie. Only husbands could sue and when they did so they were asking to be reimbursed for the wife's services. W. Page, Keeton, et al., Prosser and Keeton on the Law of Torts, §124, at 916 (5th ed. 1984). Over the years, women gained the right to sue for the loss of a husband's services and, in time, the focus of damages shifted from the loss of services to the loss of companionship and affection of the spouse. *O'Neil v. Schuckardt*, 733 P.2d 693, 696 (Idaho 1986). *See also Young v. Young*,184 So. 187, 190 (Ala. 1938) ("Alienation of affections is the robbing of husband or wife of the conjugal affection, society, fellowship and comfort which inheres in the normal marriage relation").

¶63. It would seem, at first blush, that a jurisdiction which allows for alienation suits is taking a stand in favor of marriage to the extent that the tort penalizes those who would disrupt the marital relationship.[2] History, however, has taught that this is not so. Suits for alienation of affection, criminal conversation and the like "have afforded a fertile field for blackmail and extortion by means of manufacturing suits in which the threat of publicity is used to force a settlement." Prosser and Keeton, §124 at 929.

> There is good reason to believe that even genuine actions of this type are brought more frequently than not with purely mercenary or vindictive motives; that it is impossible to compensate for such damages with what has been derisively called "heart balm;" that people of any decent instincts do not bring an action which merely adds to the family disgrace; and that no preventive purpose is served, since such torts seldom are committed with deliberate plan." Added to this is the increasing recognition that each spouse is an autonomous human being, that neither is the property of the other, and that a home so easily broken is not worth maintaining.

*Id.* at 929-30 (footnotes omitted).

¶64. As early as 1935, the Alabama Legislature abolished actions for alienation of affections "in response to a wide public sentiment, after wide discussion, to the effect that such actions had been so abused, made the means of exploitation and blackmail, that the existence of such causes of action had become of greater injury than of benefit to society." *Young v. Young*,184 So. 187, 190 (Ala. 1938).

¶65. Florida followed suit in 1945. *Rotwein v. Gersten*, 36 So.2d 419, 420 (Fla. 1948) (en banc) (noting that alienation actions have become instruments of blackmail and extortion). Florida and Alabama represent just two of forty-two states (including the District of Columbia) which no longer allow for lawsuits alleging alienation of affection; thirty-five have abolished it via statute[3], five judicially[4], and one, Louisiana, never recognized it.[5]

¶66. The Supreme Court of Washington abolished the alienation of affections tort in 1980, citing five reasons for doing so:

> (1) The underlying assumption of preserving marital harmony is erroneous;
>
> (2) The judicial process is not sufficiently capable of policing the often vicious out-of-court settlement;
>
> (3) The opportunity for blackmail is great since the mere bringing of the actions could ruin a defendant's reputation;
>
> (4) There are no helpful standards for assessing damages; and
>
> (5) The successful plaintiff succeeds in compelling what appears to be a fixed sale of the spouse's affections.

*Wyman v. Wallace*, 615 P.2d 452, 455 (Wash. 1980) (en banc). Moreover, the court stated, "A viable marriage is not one where the 'mental attitude' of one spouse towards the other is susceptible to interference by an outsider." *Id.*

¶67. This sentiment is echoed in the Iowa Supreme Court's pronouncement that "spousal love is not property which is subject to theft." *Fundermann v. Mickelson*, 304 N.W.2d 790, 794 (Iowa 1981) (en banc). "Human experience is that the affection of persons who are devoted and faithful are not susceptible to larceny - no matter how cunning or stealthful. And it is folly to hope any longer that a married person who has become inclined to philander can be preserved within an affectionate marriage by the threat of an alienation suit . . . ." *Id.* at 791.

¶68. While I agree that the marital relationship is an important foundation of our society, I disagree that we would send the wrong message if we now abolished the alienation of affections tort. The majority asserts that abolishing the tort would "send the message that we are devaluing the marriage relationship." This statement could not be more wrong.[6] The alienation suit is an anachronism which we would do well to rid ourselves of. A wealth of experience has demonstrated that these lawsuits do much more harm to society than good.[7] Our courts should not be in the business of policing broken hearts.

¶69. In 1992 we abolished the cause of action called criminal conversation for the reason that it had "outlived its usefulness." *Saunders v. Alford*, 607 So.2d 1214, 1219 (Miss. 1992). In so doing, we cited cases from other states to the effect that "heart balm torts are 'outmoded archaic holdovers.'" *Saunders*, 607 So.2d at 1217 (quoting *Hunt v. Hunt*, 309 N.W.2d 818, 821-22 (S.D. 1981)). In *Saunders*, we chose not to address alienation of affections because it was not before us. The difference between the two causes of action are that criminal conspiracy sounded in strict liability while alienation of affections occurred where there was negligence in interfering with a marriage contract. If the "wandering spouse" had sex with a third party (who may or may not have known that the spouse was married) the so-called innocent spouse was damaged and compensation could be had via a suit for criminal conversation. See *Saunders*, 607 So.2d at 1216. Why do we abolish one and not the other? The purpose for both causes of action is the same. We only made it easier to collect money under criminal conversation.

¶70. We should now follow our decision in 1992 and also abolish the "twin" to criminal conversation, i.e. alienation of affections, and get out of the business of policing broken hearts. The human emotions which fuel an alienation of affections lawsuit were identified by the playwright when he observed in another

context:

Heaven has no rage like love to hatred turned,

Nor hell a fury like a woman scorned.

William Congreve, *The Mourning Bride* act III, sc. viii (1697), *quoted in* John Bartlett, Familiar Quotations 324 (15th ed. 1980).

¶71. Accordingly, I respectfully dissent from the majority's refusal to abolish the tort of alienation of affections.

1. *See* 1 Kings 3:25.

2. *See, e.g.*, **Funderman v. Mickelson**, 304 N.W.2d 790, 791 (Iowa 1981) (en banc) (("The action has survived in the hope that it affords some protection to existing family relationships"); **Hoye v. Hoye**, 824 S.W.2d 422, 424 (Ky. 1992) (the action "came to be seen as a means to preserve marital harmony by deterring wrongful interference").

3. Ala.Code § 6-5-331 (1993); Ariz.Rev.Stat. § 25-341 (1991); Ark. Code Ann. §16-118-106 (1997) ;.Cal.Civ.Code § 43.5 (West 1982); Colo.Rev.Stat.1973, §13-20-202(1998); Conn.Gen.Stat.Ann. § 52-572b (1999); Del.Code Ann.Rev. Tit. 10, § 3924 (1975); D.C.Code § 16-923 (1998); Fla.Stat.Ann. § 771.01 (West 1997); Ga.Code Ann., § 51-1- 17(1982); Ind.Code, § 34-12-2-1(West 1986); Kan.Stat.Ann. §23-208 (1995); Me. Rev.Stat.Ann. Tit. 14, § 301 (1998); Md.Code Ann. Family Law §3-301 (1999); Mass. Gen. Laws ch. 207, § 47B (1994); Mich.Stat.Ann., § 27A.2901 (1988); Minn.Stat.Ann., § 553.01(1988); Mont.Code Ann. § 27-1- 601(1997); Neb. Rev.Stat. §25-21,188 (1995); Nev.Rev.Stat., § 41.380 (1997); N.J.Stat.Ann., § 2A:23-1(1987); N.Y. Civ.Rights Law, § 80-a (McKinney 1992); N.D.Cent. Code §14-02-06 (1997); Ohio Rev.Code Ann. § 2305.29 (1998); 76 Okla.Stat.Ann., § 8.1(1995); Or.Rev.Stat. § 30.840 (1997); 23 Pa.Cons.Stat. § 1901 (1991); R.I. Gen. Laws. 1956 § 9-1-42(1997); Tenn. Code Ann. 36-3-701(1996); Tex. Fam.Code Ann. § 1.107 (1998); Va.Code Ann. § 8.01-220 (1992); Vt.Stat.Ann. Tit. 15, § 1001; W.Va.Code, § 56-3-2a (1997); Wis.Stat.Ann. § 768.01 (1998); Wyo.Stat.Ann. § 1-23-101 (1997).

4. **O'Neil v. Schuckardt**, 733 P.2d 693 (Idaho 1986); **Fundermann v. Mickelson**, 304 N.W.2d 790 (Iowa 1981); **Hoye v. Hoye**, 824 S.W.2d 422 (Ky.1992); **Russo v. Sutton**, 422 S.E.2d 750 (S.C. 1992); **Wyman v. Wallace**, 615 P.2d 452 (Wash. 1980).

5. **Moulin v. Monteleone**, 115 So. 447 (La. 1927); **Ohlhausen v. Brown**, 372 So.2d 787 (La.Ct.App.1979). Alaska has neither a statute nor a case addressing the subject. **Veeder v. Kennedy,** 589 N.W.2d 610, 614 (S.D. 1999). Only nine states, including Mississippi, retain the cause of action. The other eight are Illinois, Hawaii, Missouri, New Hampshire, New Mexico, North Carolina, South Dakota, and Utah.

6. The special concurrence is also wrong when it claims that my reason for desiring to do away with the tort of alienation of affections is because "everybody else is doing it." The tort should be abrogated for the reason that it has become a tool for those who would use it for evil. The belief that suits for alienation of affections preserve marriages is akin to the belief in "happily ever after." Both exist only in fairy tales.

7. As the South Carolina Supreme Court recognized in *Russo v. Sutton*, 422 S.E.2d 750, 753 (S.C. 1992), notwithstanding that the public policy may be "to foster and protect marriage", the torts of criminal conversation and alienation of affections "have outlived any usefulness they may have possessed in regard to preventing the dissolution of marriages."